THOMPSON v. WHEATLAND MERCANTILE COMPANY.

CONTRACT—PAYMENT—AGREEMENT TO PAY OUT OF SPECIAL FUND, LIABILITY.

1. Where payment, under contract, is either expressly or by impliction to be made out of a particular fund, there is no liability unless the fund proves adequate for the purpose, or its inadequacy is due to the fault of the party sought to be charged.

2. In consideration of the assignment by T. of her equity in certain land to defendant, the latter agreed that plaintiff should hold an equity in the land to the amount of its claim against the husband of T., and that he, the defendant, would, either out of the equity in the land or out of the crop raised on the land, on or before a date named, pay plaintiff's claim. Plaintiff sued for the amount due, but did not allege that any part of the sum claimed had been realized out of the land itself or the crops raised on it, or that defendant had been negligent in failing to realize from either source; and the evidence disclosed that the land was not worth more than the incumbrance thereon,

and that defendant had applied the crops as far as they would go to the payment of plaintiff's claim. *Held,* that the contract bound defendant to pay only out of the equity in the land or out of the crops raised thereon, and that he was not liable as on an unconditional promise to pay, and was not guilty of a breach of his contract.

[Decided November 13, 1901.]

Error to the District Court, Laramie County, Hon. Charles W. Bramel, Judge of Second District, presiding.

Action on written contract for the payment of money brought by the Wheatland Mercantile Company, a corporation, against Herbert J. Thompson. Judgment was rendered for plaintiff, and defendant brought proceedings in error. The facts are stated in the opinion.

*W. R. Stoll,* for plaintiff in error.

Plaintiff below declared on an absolute promise to pay, but the contract proved is a promise to pay upon certain conditions, each of which was complied with by the defendant; hence, the plaintiff's claim was unproved in its general scope and meaning, and there was a failure of proof within the meaning of Section 2644, R. S. The instrument relied on is not even a contract. The party suing thereon paid no consideration, released nothing, suffered nothing, promised nothing, and had nothing to do under the instrument. It did not sign the contract and was not a party to it. The mere promise of one to pay the debt of another is *nudum pactum.* (Pike v. VanRiper (N. J.), 30 Atl., 529.) The signature of the Taits added nothing to the contract. The instrument is ambiguous, and that construction should be given to it that the parties themselves gave to it, the same being reasonable. (Wilson v. Roots (Ill.), 10 N. E., 204; 1 Brandt on Sur. & Guar., Sec. 92 et seq.; Ellis v. Hanson (Mo.), 16 S. W., 198; Meech v. Ensign, 49 Conn., 191; Hendrick v. Lindsay, 93 U. S., 143; People v. Murphy (Ill.), 6 N. E., 488; Rose v. Carb. Co., 60 M. App., 28; Crown C. & T. Co. v. York, etc., Co., 67 Ill. App., 666;

Davis v. Ravenna Creamery Co., 67 N. W., 436; W. I. L. Co. v. City, 30 id., 733; Davis v. Shaffer, 50 Fed., 764; Jenkinson v. Monroe (Mich.), 28 N. W., 663; R. R. Co. v. Blackmar (Minn.), 47 N. W., 172; Hosmer v. McDonald (Wis.), 49 N. W., 112; Lynch v. Scroth, 50 Ill. App., 668; Burgess v. Badger (Ill.), 14 N. E., 850; City v. N. Y. R. C. Co., 28 N. Y. Sup., 614; White v. Amsden (Vt.), 30 Atl., 972; Tanenbom v. Feist, 26 N. Y. Sup., 748; Pexton v. Smith (Neb.), 69 N. W., 690; M. & M. S. Co. v. Frazer (Ind.), 36 N. E., 378; Hill v. Duluth (Minn.), 58 N. W., 992.) It appears from the evidence that the term "equity" used in the instrument meant the excess that might be obtained for the Tait land over and above fifteen dollars an acre, which amount was to be paid for the land to Tait's grantor. There is no conflict in the evidence as to the construction of the writing.

The case of the plaintiff below was not established by a preponderance of evidence. Its case cannot be established by showing what certain persons thought. No promise was established as alleged in the petition. There was in fact no consideration for the promise of the plaintiff in error, since the Taits had no equity to transfer. There was no equity in the land, and Thompson received nothing whatever for his promise. When a thing transferred is shown to have no existence present or potential or to have ceased to exist before the agreement is completed, and the parties are ignorant of the fact, no obligation is created. There is then a mutual mistake of fact, which avoids the contract. (7 Ency. L. (2d Ed.), 115, and cases cited.) Where consideration is title to real estate and there is no title, the consideration fails. (3 Ency. L., 830; 6 id. (2d Ed.), 673; id., 677-679; id., 789.)

This is not a case where the party sued has promised a debtor that he will pay his debt to another. The promise is that either the debtor or himself will pay, and the promise is made to the creditor. It is not brought within any class of cases where it is held that the beneficiary may sue the

promisor. But the right of action is entirely subordinate to the terms of the contract as made. The beneficiary cannot acquire a better standing to enforce the agreement than that occupied by the contracting parties themselves. His right to recovery is subject to the equities between the original parties, and in no case is he permitted to recover where as between the promisor and promisee there has been want or failure of consideration, or for any other reason the contract is void. (7 Ency. L., 109; Ellis v. Harrison (Mo.), 16 S. W., 198; Dunning v. Leavitt, 85 N. Y., 30; Branden v. Hughes, 22 La. Ann., 360; Trimble v. Strother, 25 O. St., 378; Parlin v. Hall, 2 N. D., 473; Crandall v. Payne, 154 Ill., 627; Anderson v. Fitzgerald, 21 Fed., 298; Bank v. Grand Lodge, 98 U. S., 123; Wheat v. Rice, 97 N. Y., 302; Corne v. Lewin, 95 N. Y., 423; Phalin v. Barney, 11 Vt., 82.) A guarantor is not chargeable beyond the strict terms of his obligation; and is always to be discharged by failure of consideration upon which the contract is founded. (9 Ency. L., 81; 1 Brandt on Suret. & Guar., 93, 94, 122, 123.)

Any instrument, not itself importing a consideration, made expressly payable out of a particular fund, is not payable unless the fund is in existence. (2 Ency. L., 324; 1 Daniels on Neg. Istr., 161; Chitty on Bills, 41-44; Story on Prom. Notes, 22, 25, 27; Lyman v. N. P. Elevator Co., 62 Fed., 891.) In this case there was no fund out of which payment was to be made according to the agreement.

*Clark & Breckons,* for defendant in error.

Where one party sells property to another and the latter agrees with the vendor to pay the purchase price to a third party, such third party may sue the promisor, although he has parted with nothing of value. In England it is held that such a contract may not be enforced, but the rule is different in this country. (Lawrence v. Fox, 20 N. Y.; Hendrick v. Lindsay, 93 U. S., 143; Bishop v. Stewart, 13 Nev., 25; Miliana v. Toginni (Nev.), 7 Pac., 279; Brewer

v. Maurer, 38 O. St., 543; Strong v. Marcy, 33 Kan., 109; Company v. Wagner (Cal.), 7 Pac., 705; Johannes v. Company, 66 Wis., 57; Knowles v. Erwin, 43 Hun, 150; Moore v. Hubbard, 15 Ind. App., 84; Duer v. Ruediger, 65 M. App., 407; Kaufman v. Bank, 31 Neb., 667; McCarty v. Blevins, 5 Yerg., 195; Urquhart v. Brayton, 12 R. I., 169; Farrow v. Turner, 2 A. K. Marsh, 495; Hecht v. Caughran, 46 Ark., 135; Coleman v. Whitney, 62 Vt., 129; Shotwell v. Company, 31 Ala., 727; Dodge v. Mass., 82 Ky., 445; Eddy v. Roberts, 17 Ill., 508; Thompson v. Dearborn, 107 Ill., 93; Wood v. Moriarty, 15 R. I., 521; Lamb v. Donovan, 19 Ind., 41; Horn v. Fuller, 6 N. H., 511; Sharp v. Meyer, 20 Neb., 226; Rogers v. Gosnell, 58 Mo., 590; Bolln v. Metcalf, 6 Wyo., 1.) Therefore, if any benefit was conferred upon Thompson by Mrs. Tait, in consideration of which the promise was made, the Mercantile Company had the right to sue thereon. The transfer made by Mrs. Tate to Thompson was the moving cause for Thompson's promise. She was possessed of certain rights, and upon the performance of certain conditions had the right to the title to the land. In the meantime she had the right to the use and possession of the land, including the use of water for its irrigation. She possessed then certain valuable rights. These rights were assigned to Thompson, and the transfer formed the consideration for Thompson's promise. It is evident that there was sufficient consideration for the promise.

What is the meaning and effect of the contract? In the first place the agreement is to pay a certain sum of money. And the time for payment is named in the contract, viz., on or before November 1, 1896. The only doubt is as to the manner of payment. The intention that the promise to pay is to be limited by the ability of the crops or equity in the land to produce the amount cannot be gathered from the instrument itself. There is no direct expression to that effect. The meaning and effect is that at all events, on or before November 1st, the money will be paid, but if in the meantime the land yields sufficient crops, or is sold for a sufficient sum,

then the amount will be paid. Under this construction the contract is not an idle formality. The contract amounted to an absolute promise. (Muncy v. Dantel, 19 Wall., 560; Cota v. Buck, 7 Metc., 588; Sears v. Wright, 24 Me., 279; Palmer v. Hummer, 10 Kan., 464; Mense v. Osborn, 5 Mo., 544; Crooker v. Holmes, 65 Me., 195; Walker v. Woolen, 54 Ind., 164; Gardner v. Barger, 4 Heisk., 670; Court v. Steckman, 74 Pa. St., 14; Kincaid v. Higgins, 1 Bibb., 396; Ubsdell v. Cunningham, 22 Mo., 124; Lewis v. Tipton, 10 O. St., 88.) The same construction must be given to the instrument when the acts and declarations of the parties are considered. This sort of evidence is out of place in this case, as the contract is not ambiguous. But if it is resorted to, then the evidence fully sustains the conclusion of the trial court.

The motion for new trial was not overruled until the term following the trial, and hence the bill of exceptions was not presented until some time during the term after the trial. Was this sufficient to authorize consideration of the bill? (Hicks v. Pearson, 19 Oh., 436; Dayton v. Hinsey, 32 id., 262; Kline v. Wynne, 10 Oh. St., 228.)

*W. R. Stoll,* for plaintiff in error, in reply.

In assigning her interest in the land to Thompson Mrs. Tait assigned something she had no right to enforce against her vendor. She, therefore, conveyed nothing substantial. But she assigned merely her equity, and she had none. The authorities cited by counsel for defendant in error are not in point. In this case there was no liability of any nature from Thompson to the company outside the contract. The contract being ambiguous, a proper subject of inquiry was the construction placed thereon by the parties. The filing of the motion for new trial, alleging insufficiency of the evidence to support the judgment, carried the objection over the term until the term at which it was overruled, and the exception to such ruling saved the question; and whatever errors may have been committed and excepted to on the trial and lost

by reason of not having been reduced to writing and embraced in a bill presented during the term, the error in deciding the merits of the case, or rendering judgment contrary to the evidence, was preserved by the ruling on the motion for new trial, and that can be reviewed by the supreme court. The statute of this State is essentially different from the Ohio statute, since the latter limits the time of presenting a bill to the term, while our statute permits it to be presented after the term.

CORN, JUSTICE.

The defendant in error brought suit and obtained a judgment against the plaintiff in error for the sum of $470.44 and interest alleged to be due under the following agreement:

"In consideration of Mrs. Fannie Tait's assigning to me her equity in the S. E. ¼ of sec. (7) seven, township 24, range 68, I hereby agree with the Wheatland Mercantile Co. that they shall hold an equity in the above described land to the amount of the balance of their account and claim against Lewis Tait, and that the said Fannie Tait and Lewis Tait or myself will either pay the amount claimed by the Wheatland Mercantile Co. against Lewis Tait and Fannie Tait out of the equity in the above described land or out of the crop raised on the said land, on or before Nov. 1, 1896, together with interest thereon at 12%.        H. J. THOMPSON,
                                     "FANNIE TAIT,
                                     "LEWIS TAIT."

The evidence discloses that on February 16th, 1894, Mrs. Tait had entered into a written agreement with the Wyoming Development Company to purchase the quarter section of land mentioned, with the appurtenant water right, at $15 per acre, to be paid in ten yearly installments. She paid the first installment and went into possession. On September 30th, 1895, the date of the agreement sued on, she was in default of payment of the installment due February 16, 1895, but she and her husband were in possession of and farming

the land and the Wyoming Development Company had taken no steps toward declaring a forfeiture.   The Taits owed the Wheatland Mercantile Company about $600 and Thompson, the plaintiff in error, some $400, and the agreement sued on was entered into with a view to securing the payment of these sums, Mrs. Tait on the same day having assigned her interest in the land contract to Thompson.

Plaintiff in error insists that his agreement of September 30 was not an absolute promise to pay to the Mercantile Company the amount of their claim, and that in any event the promise is without consideration.

There was no allegation in the plaintiff's petition that any part of the amount claimed had been realized out of the land itself or the crops raised on it, or that the defendant was negligent in failing to realize from either source.   And the evidence tends to show that while, at the time the agreement was entered into, all the parties to the transaction supposed that both debts could easily be paid out of the equitable interest of the Taits in the land and out of the crops, it subsequently proved that the land would not bring more than the incumbance upon it, and the defendant, plaintiff in error, had applied the crops, as far as they would go, to the payment of plaintiff's claim.

The courts in England and this country have repeatedly construed instruments like the one sued on, and it is held, we think, with practical uniformity that the character of the instrument as a bill or note is destroyed if it be made payable expressly or by implication out of a particular fund, for its payment becomes then conditioned on the sufficiency of that fund, which may prove inadequate.   (Daniel on Neg. Inst., Sec. 50.)   A careful distinction is made where the statement as to a particular fund, as for instance in a bill of exchange, is inserted merely as an indication to the drawee how to reimburse himself, or to show to what account it should be charged.   In such cases it is held that the money is to be advanced on the credit of the person and the payment is not limited to the proceeds of the particular fund.   But

where the payment, either expressly or by implication, is to be made out of a particular fund, all the cases, so far as we have been able to find, hold that there. is no personal liability unless the fund proves adequate for the purpose or its inadequacy is due to the fault of the party sought to be charged. In the case of VanVacter v. Flack, suit was brought against VanVacter as the acceptor of a bill of exchange by which he was requested to pay $500 on the 1st day of January, 1837, "out of the notes left in your hands by me for collection." VanVacter accepted generally. The declaration contained no averment that the notes, out of the proceeds of which the bill was to be paid, had been collected. The court say: "The decisions are numerous on similar instruments, and in no instance that we are aware of have they been held to be bills of exchange. (Chitty on Bills, 157-8, and notes.) This case is distinguished from that class of cases in which the particular fund is mentioned merely as a direction to the drawer how he may reimburse himself. This bill is predicated exclusively on a particular fund, not stated to be in hand, but to arise out of notes left for collection. The understanding of the parties must have been that the payment of the order depended on the collection of these notes. * * * The acceptance was general and must be understood only as an engagement to pay out of that particular fund, if it should come to hand by the time appointed for payment. On this acceptance an action may be maintained, but it can only be done by averring and proving the collection of the fund." (VanVacter v. Flack, 1 S. & M. (Miss.), 398.) In a later case in the same court the instrument sued on was: "Please pay to the order of J. L. Covert three hundred and fifteen dollars out of the twelve bales of cotton attached by you." The court say the instrument is not payable generally and absolutely, but is payable out of a particular fund. If that fund should fail, or never be realized by the drawer, although he might have accepted, he would be under no liability. (Wadlington v. Covert, 51 Miss., 635.)

In Worden v. Dodge the plaintiff relied upon an agreement by which, for value received, the defendants jointly and severally promised to pay to the plaintiff, by his name or order, $250, with interest, payable one-half in two years and the other half in three years out of the net proceeds of a certain bed of ore, the bed to be opened and the ore disposed of as soon as conveniently might be. The plaintiff introduced the agreement and rested and the court, upon the motion of the defendant, directed a non-suit. The New York Supreme Court, in denying a new trial, say the non-suit was proper; that, although the promise was to make payments at certain specified times, the payments were to be made out of the net proceeds of ore to be raised and sold from a certain ore bed. That here was a contingency; the fund might turn out to be inadequate, in which case there would be no obligation to pay at any time. (Worden v. Dodge, 4 Denio, 159.) In Parsons on Notes and Bills, after stating the general doctrine and citing the cases supporting it, the author adds that "in many of the above cases it was an order rather than a promise, and the question was not whether a certain instrument was a promissory note, but whether it was a bill of exchange. In this respect, however, these instruments are precisely the same." (Parsons on Notes and Bills, 44-5. See also Story on Bills, Secs. 46, 47.) Instruments drawn upon a particular fund, whether the fund has already accrued or is to accrue in future, are not negotiable bills or notes, since they do not carry the general personal credit of the maker and since they are contingent upon the sufficiency of the fund on which they are drawn. (4 Am. & Eng. Ency. Law (2d Ed.), 87.)

The instrument under consideration comes clearly within the rule. It is declared upon as an unconditional promise to pay, but by its express terms it is only a promise to pay "out of the equity in the above described land or out of the crop raised on the said land."

There is a good deal of evidence in the record directed

to the question whether the parties to the transaction understood the instrument as binding Thompson unconditionally to pay the claim of defendant in error. Much of this testimony is a mere statement of the opinions of the parties upon the subject and was not competent evidence. But it appears that one of the officers of the company supposed it bound Thompson absolutely to the payment, while another testifies that he never supposed that it did. And Thompson testifies that he never considered himself bound to pay unless the necessary funds were realized out of Tait's interest in the land or out of the crops. He further testifies that from conversations with the officers of the company prior to, and at the time of, entering into the arrangement he thinks they never considered him personally liable. But, however this may be, it is clear from the evidence that at the time the instrument was executed all parties supposed that the fund would be ample to pay the claims of both defendant in error and plaintiff in error, so that there was no occasion for them to give special consideration to the question of Thompson's personal liablity in case the fund should prove inadequate. Consequently the agreement went no further than to provide that Thompson should handle the property out of which the fund was to be realized, and out of it pay the company's claim, his own claim being postponed until the other was satisfied. It is clear from the evidence that plaintiff in error was applying the proceeds of the crops to the payment of the claim of defendant in error; that the property in his hands had not yielded, and could not be made to yield, anything additional to the fund out of which payment was to be made, and that, consequently, plaintiff in error was guilty of no breach of his contract.

The judgment will be reversed and the cause remanded for a new trial.                                    *Reversed.*

POTTER, C. J., and KNIGHT, J. concur.