April Term, 1906.

## BOSLER v. COBLE.

Reviewable Order—Contracts—Construction—Parol Testimony —Appeal and Error—Injunction—False Representations, Action For — Evidence—Letters — Instructions — New Trial — Newly Discovered Evidence.

1. An order made before trial and before issue joined, striking out as irrelevant alleged new matter in plaintiff's reply, so far as the same might be made ground for affirmative relief, but permitting it to remain as defensive matter to the set-off and counterclaim in the answer, is, after verdict and judgment, reviewable on error; but, even if erroneous, such order was not prejudicial to defendant on the ground that the pleaded matter went to the jury with evidence in support thereof, where, when the order was made, a jury had not been demanded, and could not have been, and the court was not advised that the cause would be tried by a jury.

2. Where the terms of a contract are clear, and there is no ambiguity on its face, the question of its construction is one of law, and for the court to determine.

3. Where a contract is not ambiguous, but its meaning apparent, and the intention of the parties clearly expressed, it is error to resort to proof by parol testimony of collateral facts and surrounding circumstances which would only serve to affirm that already expressed, or give it a different meaning.

4. The contract involved being clear and not ambiguous on its face, it was not error for the trial court to refuse to submit the question of its construction to the jury.

5. In a contract for the sale by the plaintiff to defendant of the former's interest in a corporation and partnership engaged in the ranch and cattle business, it was recited that the sale was made in consideration of $25,000 paid at the time, and it was agreed that defendant should sell all the property of the concerns at certain stated prices, and that "after deducting from the proceeds of these sales the sum of $214,925, with interest at 6 per cent. from May 1, 1903, until paid, and $25,000, the sum already paid, to pay to

said John C. Coble (the plaintiff) 40 per cent. of the net proceeds." *Held,* that the contract was not to be construed as making the $25,000 already paid payable out of the gross proceeds of the sales of the property, but that said sum was an absolute payment, and the excess over the amount reserved to defendant and the amount so paid to plaintiff was to be divided in the proportion of 40 per cent. to plaintiff and 60 per cent to defendant.

6. Defendant cannot complain on error of an order granting an injunction *pendente lite,* which never became operative because the plaintiff failed to give the bond required by the order to be given and filed as a condition precedent to the injunction taking effect.

7. In a suit upon a note given in consideration of the sale of plaintiff's interest in certain corporation and partnership property, defendant sought to recover damages for plaintiff's failure to transfer title and leased land which he held as trustee for the corporation to defendant as trustee for the same purpose, as he had agreed to do. The conveyances, without objection as to their execution, were tendered in open court. *Held,* that though some of the leases for State lands had expired, the damage would be but nominal, and did not constitute a counterclaim or set-off, the corporation having continued in possession of the lands, and the failure to assign the expired leases did not prevent the corporation from obtaining renewal thereof, which it would be required to do if it desired to remain in possession.

8. Defendant, in a suit upon a note, sought to recover damages by way of set-off and counterclaim for alleged false representations in respect to the sale of an interest in certain cattle, for which the note was given, and on the trial produced a large number of letters from the plaintiff to the defendant, offering a part only of each of them in evidence for the purpose of showing plaintiff's representations from time to time for several years preceding the sale as to the condition of the herd, the weather, the losses and increase, and other like facts. *Held,* that the ruling of the court, upon plaintiff's demand, that the letters be admitted, but read in their entirety, was not prejudicial to defendant; since the letters, though not so offered, showed the confidential, personal and business relations between the parties, which was proper for the jury to consider in determining what reliance defendant placed upon the parts of the letters offered, and were also competent as

corroborative of defendant's testimony that he relied upon plaintiff's alleged representations because of his confidence in him. *Held,* further, that the objection that the jury were wearied from listening to all the letters could not be considered, since the record did not show that the trial court's attention was called to the matter.

9. In a suit upon a note given to plaintiff by defendant as part payment for the former's interest in cattle which he had for several years managed for himself and the defendant, the latter sought to recover damages for false representations alleged to have been made from time to time with reference to the condition of the herd, the annual increase and losses, the ability of the plaintiff as manager of such a business, and other like matters. It appeared from a letter introduced by plaintiff that, in the year preceding the sale to defendant, the plaintiff proposed to move the cattle to an adjoining State for better feeding facilities, with which proposition the defendant disagreed. Large losses in the cattle to defendant's knowledge occurred between that time and the time of the sale. Evidence was introduced relative to plaintiff's skill as a manager in the cattle business. At defendant's request the jury were charged that if they found plaintiff to have falsely represented himself as skilled in the business, or that he had given continuous and effective attention to it, and that defendant relied thereon, the defendant should recover. *Held,* that it was not error to instruct at plaintiff's request that the plaintiff could not be held responsible as manager for losses caused by direct interference by defendant with any of plaintiff's well considered plans; such as wintering the cattle in an adjoining State; since the question of plaintiff's negligence was inferentially in the case by the pleadings and the evidence, and the instruction cautioned the jury against holding the plaintiff responsible in the action for mere losses occurring while he was manager, not connected with any false representations, and the losses occurring through the fault of defendant could not be attributed to the plaintiff.

10. In a suit where defendant sought to recover damages from plaintiff on account of alleged false representations of the plaintiff in a sale of cattle by the latter to the former, it was not error to refuse a new trial on the ground of alleged newly discovered evidence to the effect that at one time the plaintiff had made a false entry of the number of cattle, where it appeared that the correct number was sub-

sequently and before defendant's purchase communicated to him by plaintiff.

11. A new trial on the ground of newly discovered evidence was rightly refused where the moving party had not been deprived of the evidence except by reason of his own failure to exercise reasonable diligence to obtain the same; it appearing that he knew at the time of the former trial that the alleged new witness had been at the place where the circumstance sought to be proven occurred, and that said witness was much in the company of such moving party during such former trial.

12. A new trial on the ground of newly discovered evidence was rightly refused; where the alleged new evidence would be immaterial.

[Decided April 2, 1906]          (84 Pac. 895.)

ERROR to the District Court, Albany County, Hon. David H. Craig, Judge.

The action was brought by John C. Coble against Frank C. Bosler upon certain promissory notes. Defendant sought by way of set-off and counterclaim to recover damages for alleged false representations of the plaintiff, upon which defendant was induced to purchase the property for which the notes in suit were given. The material facts are stated in the opinion.

*N. E. Corthell,* for plaintiff in error.

The new matters set up in the reply were properly held by the trial court to constitute a departure from the rules of pleading. They have no relation to the causes of action sued upon by the plaintiff, but undertake in part to set up new, independent causes of action in tort in favor of plaintiff and against the defendant; causes of action for rescission and accounting and for an injunction, the effect of which was to restrain (through its manager) the corporation, which was not a party to the suit at all, for any disposition of its property, and to obtain in this indirect way the relief only appropriate to a writ of attachment against the defendant. Refusing to strike it out absolutely was clearly prejudicial error.

The essential obligation imposed upon Bosler by the agreement was to pay to Coble 40 per cent of the surplus proceeds of the properties over $215,000, which was the amount Bosler had in the enterprises; and the $25,000 payment in notes was an advance payment upon this 40 per cent interest in the surplus assumed to exist; the properties were subsequently sold, realizing approximately $162,000, a sum far less than the minimum sum fixed by the agreement to be retained by Bosler; and Bosler was, therefore, entitled to have the unpaid notes returned to him and the sum of $10,000, previously paid on the notes, refunded. The defendant was not permitted to present the case upon this contention, either to the court or to the jury. By the instructions of the court, this defense was eliminated from the case.

The effect of the court's decision was that, under the terms of the contract and the evidence of the circumstances, but one construction was possible, and that as a matter of law the defendant's contention was conclusively wrong. The question is not without difficulty, and there is argument on both sides. There are some expressions in the contract which appear to support the plaintiff's contention; indeed, the language of the entire contract may be reconcilable with that view if no heed be taken of the situation of the parties, the character and condition of the subject matter, the actual effect of either construction upon the rights and interests of the parties, and other lights ordinarily applied in such cases. The concrete inquiry into the origin of the contract, the state of facts to which it was meant to apply, the mutual rights and obligations of the parties as they were conceded to exist, the methods they adopted, presumably to work out mutual justice, and the actual result of the contract in working out justice or injustice, reason or absurdity, are considerations which this court and all others from time immemorial have thought proper to apply to the solution of questions of this kind. (Balch v. Arnold, 9 Wyo., 27; Car Co. v. Ry. Co. (Minn.), 121 Fed., 609; Accumulator Co. v.

Dubuque Street Ry. Co., 64 Fed., 70; Rockefeller v. Merritt, 76 Fed., 909; U. S. v. Charles, 74 Fed., 142; Coghlan v. Stetson, 19 Fed., 727; Allen v. Hammond, 11 Pet., 63; Lowber v. Bangs, 2 Wall, 728; Canal Co. v. Hill, 15 Wall, 94; U. S. v. Pack, 102 U. S., 64; Merriam v. U. S., 107 U. S., 437; Lisle v. Hopkins, 12 S. & M., 299; Carey v. Gunnison, 65 Ia., 702, 22 N. W., 934; Robinson v. Stoow, 39 Ill., 568; 24 Ency. L., 1042; Frank v. Stratford-Hancock, 13 Wyo., 37; Thompson v. Wheatland Merc. Co., 10 Wyo., 86.)

In the case at bar the contract proceeded obviously upon the assumption that there existed surplus numbers and values in the cattle and other properties of the two concerns over and above $215,000 which Bosler had in them in the form of stock, bonds and debts of the corporation; and of the plaintiff to him; that the extent or amount of this surplus could be accurately determined only by putting agreed values on the portions of the assets, and counting them out, and by putting upon the market the marketable portion of the cattle; that Bosler was entitled to receive his $215,000 and 60 per cent of the excess, the remaining per cent being due to Coble.

We think this assumption by the parties is reasonably clear from the terms of the contract itself. It more emphatically appears, however from the account, which shows that practically the entire properties had been purchased with funds furnished by Bosler; that he had not only furnished funds, by way of investments and loans, for these enterprises, but had lent Coble individually large sums, for which he held notes and mortgages; that the book accounts and stock reports kept by Bosler from data furnished by Coble indicated a very considerable surplus over the investment and that in the negotiations leading up to the contract, both of the parties figured on a large excess of resources.

The requirement by the court that all the letters, part only of which were offered by defendant, should be read

entire grossly violated the fundamental rule that the evidence must correspond with the findings, and be confined to the point in issue, since much of the letters so read was entirely irrelevant. (1 Greenleaf Ev., 51; Best Pr. of Ev., 229 to 249; 1 Phillips Ev., 138, 158; 1 Starkie Ev., 40; Peake Ev., 6; Roscoe Ev., 36.) It is true that when portions of a letter are offered to be read by one party, the other party is entitled to read such other portions of the letter as are so connected with the portion offered, as to in any way qualify or explain such matter. Detached and independent statements, however, in no way connected with the statement in evidence are not admissible. (Price v. Samo, 7 Ad. & E., 627; Rouse v. Whited, 25 N. Y., 172; 1 Greenleaf on Evidence, 201; 3 Jones Ev., 822; Planter v. Planter, 78 N. Y., 90; Ellis v. Short, 38 Mass., 142.)

It has sometimes been said that error in admitting testimony will not be sufficient for reversal unless it appears to have been prejudicial to the party complaining. It is submitted, however, that this is not a considerate, careful or correct statement of the rule. The statement itself is a perversion of the rule, which is sometimes stated in the radically different form that admission of immaterial evidence is not ground for reversal, "when it appears that no prejudice resulted therefrom." (Seska v. R. R. Co., 77 Ia., 137; Deery v. Cray, 5 Wall, 795; Moores v. Nat. Bk., 104 U. S., 625; Gilmer v. Higley, 110 U. S., 47; R. R. v. O'Brien, 119 U. S., 99; Mexia v. Oliver, 148 U. S., 665; R. R. Co. v. O'Reilly, 158 U. S., 334; Lucas v. Brooks, 85 U. S., 436; U. S. v. Gentry, 119 Fed. 70-75; Assn. v. Schryock, 73 Fed., 774; R. R. Co. v. Field, 137 Fed., 14; Nat Biscuit Co. v. Nolan, 138 Fed., 6; Terry v. Starch Co., 43 Neb., 866; Winker v. Foye, 33 N. H., 171; Hoberg v. State, 3 Minn., 262; Meyers v. Malcolm, 6 O., 292; Clark v. Vorce, 19 Wend., 232; Bk. v. Winfield, 24 Wend., 219; R. R. Co. 67 N. H., 452.)

In charging the jury the court emphasized this error by an instruction in which the jury were expressly told that

they should "weigh and consider the letters between the parties." Instead of this instruction it is submitted that the court should have carefully directed the jury to a discriminating consideration of those matters only which were legitimately in evidence upon the actual issues.

The plaintiff was erroneously permitted to offer much testimony as to his general reputation as a cowman. No issue was made as to Coble's reputation in this respect. It was not an issuable fact in any view of the case. It was alleged in the counterclaim that Coble represented himself to be a man of unusual skill and judgment in the business, and that the representation was untrue. This was made the pretext of the "reputation" evidence admitted by the court. It is submitted that this was prejudicial matter which can not be justified. Was it true or not that Coble was a man of exceptional skill? The witnesses do not speak upon this point, though, seemingly, they may have knowledge. They speak only as to his "repute." This testimony was hearsay, irrelevant, incompetent matter. It tended like the other matters we complain of, to draw away the minds of the jurors from the real issue, and moreover, had a positively wrongful effect in its tendency to lend credit and standing to the plaintiff by vague generalities, where specific facts and acts only were issuable. Such evidence alone is ground for reversal. (Holtzman v. Hay, 118 Ill., 534; Stevenson v. Gelsthorpe, 10 Mont., 563.)

Among the other incompetent or irrelevant matters admitted were the notes sued upon. No issue was made as to these notes. They were permitted to be thrust into the record, with other make-weights, apparently upon the theory that the sight of the notes would outweigh or overbear the defendant's evidence in the common mind. Again in the instructions of the court these notes (or the contract under which they were given) are referred to as "solemn instruments" and the jury were told that "it is inexpedient on the grounds of public policy, to set them aside upon the ground of fraud, unless proof of the fraud is clear and strong."

There was no issue in the case on the subject of negligence of either the plaintiff or the defendant; yet by the evidence and finally by the instructions the case was put before the jury to determine who was at fault for the losses among the cattle. The action of the court in permitting this false issue to be proposed and submitted to the jury, could not but divert their attention from the real issues in the case, and could not be taken by the jury otherwise than to mean that they were to find in some manner for or against the plaintiff or the defendant upon this issue. (Hollen v. Wisner, 11 Ia., 190; Hall v. Strode (Neb.), 28 N. Y., 312; Wallace v. Wren, 32 Ill., 146; C. C. & I. R. Co. v. Troesch, 68 Ill., 545; Chi. & Alton R. Co. v. Mock, 72 Ill., 141.)

The action of the court in refusing effectually to strike out the improper matters in the reply is prejudicial and appealable. (2 Cyc., 607; Zimmerman v. Gaumer, 152 Ind., 552; Specht v. Spangenberg, 70 Ia., 488; Bicklin v. Kendall, 72 Ia., 490; Nat. Alb. Esch. Bk. v. Cargill, 39 Minn., 477; Rice v. R. Co., 24 Minn., 477; Cooper v. Vanderveer, 47 N. J. L., 178; Walters v. Starnes, 18 N. C., 842; Lane v. Richardson, 101 N. C., 181; Jones v. Iris. Co., 11 Utah, 401; Dewald v. Dewald, 89 Wis., 353; Fisher v. Schuri, 73 Wis., 370; Noonan v. Orton, 30 Wis., 609; Kewaunee Co. v. Decker, 28 Wis., 669.) So the order restraining the defendant from disposing of any of the property of the corporation pending the action is prejudicial error and an order which is reviewable in some states before, in others after, final judgment in the action. (2 Cyc., 598; Wyatt v. Wyatt, 2 Ida., 219; Andrews v. Love, 46 Kan., 264; Burke v. Ry. Co., 45 O. St., 631; Rockford Watch Co. v. Rumpf, 12 Wash., 647; Rossiter v. Ins. Co., 96 Wis., 466.)

There is much repetition in the instructions. They deal wholly with the question of false representations arising under the defendant's counterclaim; except in the case of the 14th instruction, which introduces an issue wholly foreign to the pleadings. The instructions exclude absolutely

the defense of set-off, the claim for damages for the breach of the plaintiff's contract to transfer lands and land leases; and, in several instances, they direct a general finding to depend upon the consideration of a part or a particular class only of the numerous misrepresentations alleged and relied upon. They are inconsistent with each other. They contradict the propositions of law laid down in the instructions given at the request of the defendant. They propose false issues, and they state in some instances erroneous rules of law as applied to the facts in the case. No. 1 requires the jury to find a definite sum (the amount of the notes and interest) for the plaintiff unless they find for the defendant upon the false representations alleged, enumerating the elements necessary to sustain the latter finding. Some of these elements are stated in the alternative, yet the instruction concludes by the statement that it is necessary for the defendant to sustain his answer on all of these material matters. To say the least, the instruction in this respect is ambiguous and more likely to mislead than to enlighten the jury. The instruction not only ignores and takes out of the case all other issues except the issue as to false representations, but upon that issue fails wholly to take into account the proposition that, by reason of the confidential relations subsisting between the parties and the active and responsible agency which the plaintiff sustained toward the defendant, a liability might arise by reason of negative as well as by positive deceit; that the taking advantage of a delusion previously created or known to exist, the keeping silence where it was his duty to speak, the failure in the affirmative duty of disclosing discovered errors and other like conduct upon which no liability may arise in dealing between strangers, may yet be actionable in a case possessing this element of confidence and trust. (14 Ency. L., 69, 70; 1 Story, Eq., 214; 1 Lindley Partnership, 303; Sheete v. Johnson, 25 Ore., 59; Brooks v. Martin, 69 U. S., 70; Sexton v. Sexton, 9 Grat., 204.)

The second instruction, given at the request of the plaintiff is erroneous in that it requires the defendant to "estab-

lish his defenses," otherwise directing a finding for the plaintiff. The natural meaning of this instruction is that the defendant must sustain all his defenses, prove all his allegations, or the plaintiff should recover. The third instruction is erroneous, first, in instructing the jury at all upon the subject of presumption. There is no presumption of law arising in such cases as this, and if presumption of fact were meant, the subject is no less an improper one for an instruction of the court. The broad proposition as stated in this instruction, that the jury have no right to presume fraud, in view of the voluminous evidence introduced on this issue, would naturally be understood by the jury to mean that they had no right to draw such presumption from the evidence in the case.

Following this proposition occurs the erroneous statement that it "must be clearly proved by the party making the same." The same proposition is reiterated and emphasized in instruction No. 13, where the jury is again instructed that it is inexpedient upon the grounds of public policy to set aside a solemn instrument upon the ground of fraud "unless proof is clear and strong;" and again, they are told that to set aside the contract of the notes, "the proof must be clear and strong." This exacts a higher degree of proof and imposes a greater burden upon the defendant than the law sanctions in civil cases. It contradicts and neutralizes to a great degree instruction No. 16, given at the request of the defendant. It uses language and lays down a rule, which, in the same or different form, has been stamped with disapproval in the opinions of many courts. (Page v. Clark, 51 Conn., 200; McLeod v. Sharp, 53 Ill. App., 406; Hall v. Wolf, 61 Ia., 559; West v. Druff, 55 Ia., 335; Evans v. Montgomery, 95 Mich., 497; Bauchwitz v. Tyman, 11 Ill. App., 186; Swinney v. Both, 28 Tex., 113; Ins. Co. v. Dill, 91 Ill., 174; VanDeventer v. Ford, 60 Ala., 610; Battles v. Tallman, 96 Ala., 403; 11 So. 247.)

The fourth instruction undertakes to state the proposition that the defendant, in order to claim damages for false rep-

resentations, must have acted upon the same or some of them "in ignorance of its or their falsity and with a reasonable belief that it and they were true." This seems to mean that the defendant must have believed that one and all of the representations acted upon were true.

Where one possesses or assumes to possess special knowledge or skill in a particular business, a false statement of opinion by him where deception is designed and injury follows is equally actionable with the most positive and intentional misstatement of fact. (Hedin v. Institute, 62 Minn., 146; Cressler v. Rees, 27 Neb., 515.) It is enough to entitle the plaintiff to recover if the false representation complained of was material inducement to the contract or transactions which occasioned the injury, although there may have been co-operating inducements. (Bk. v. Bk., 56 Fed., 139.)

In the course of the trial the defendant was permitted to offer evidence of his willingness to assign the leases and also that he had assigned them, and further, he was permitted to make a tender in open court of such assignments. We insist that this course of procedure was in plain violation of the rights of the defendant; that it denied compensation for the breach of a plain obligation imposed by the contract upon Coble; that it permitted plaintiff to introduce proof in direct contradiction of his own pleading, upon which the defendant was entitled to rely, and that it withdrew from the consideration of the jury an issue of fact upon which the defendant was clearly entitled to a finding. (McDonald v. Hunnah, 59 Fed., 977.)

Upon the issue of false representations as well as upon the issue of the construction of the contract of April 20, 1903, we believe the defendant was entitled to a peremptory instruction as the evidence stood at the close of the trial. ·

The sufficiency of the allegations on the subject of false representations does not appear to be questioned, the character of the representations as set out in the pleadings being clearly sufficient, if proved, to entitle the defendant to

recover. The making of these representations was, with slight exceptions, proved by the uncontested written evidence in the handwriting and over the signature of the plaintiff. This was supplemented by the testimony of Mr. Bosler, and thus the making of practically all of the representations was fully proved.

The court erred in refusing a new trial for newly discovered evidence, since the affidavit on behalf of the defendant was sufficient in that respect. (14 Ency. Pl. & Pr., 810, 818; Weber v. Weber, 5 N. Y. S., 178; Wayt v. R. & M. R. Co., 45 Ia., 217; Stineman v. Beath, 36 Ia., 73; Hambel v. Williams, 37 Ia., 224; Murray v. Weber, 92 Ia., 757; Feister v. Kent, 92 Ia., 1; Gooldsworthy v. Town of Linden, 75 Wis., 24; Van Horn v. Redmon, 67 Ia., 689; Gardner v. Mitchell, 6 Pick., 114; Chatfield v. Lathrop, 6 Pick., 417; Gray v. Harrison, 1 Nev., 502; Hobler v. Cole, 49 Cal., 250; Spears v. Ayr, 66 Ia., 721; Peyser v. R. Co., 30 N. Y. S., 610; Dierdolf v. Winterfield, 26 Wis., 175; Harrell v. Gregory, 88 Ga., 170; Wilder v. Greenlee, 49 Ill., 253; Van Riper v. Dundee Mfg. Co., 33 N. J. L., 152; Watts v. Howard, 48 Mass., 478; Assn. v. Askew, 11 Tex. Civ. App., 59; Demonbreun v. Walker, 63 Tenn., 199; Collins v. Loyd, 31 Ga., 128; Schweyer v. Austett, 2 Ill. App., 365; Wall v. Trainer,, 16 Nev., 131; Oakley v. Sears, 24 N. Y. Super. Ct., 73; Warren v. Hope, 6 Me., 479.) As to presumption of prejudice from error see Bartges v. O'Neil, 13 O. St., 72, 78.

*John W. Lacey,* for defendant in error.

The order refusing to strike out alleged irrelevant matter from the reply is not appealable, and that is the rule announced by the cases cited by counsel for the plaintiff in error, as well as many others which might be cited.

The plaintiff in error was not injured by the order allowing a temporary injunction, which never took effect, because the required bond was not given. Such an order could not have been effective without the giving of the statutory un-

dertaking. (Rev. Stat. 1899, Sec. 4043; *In re* George, 5 O. Cir. Ct., 207; Diehl v. Friester, 37 O. St., 473.)

It was the duty of the court and not the jury to construe the contract. (Nielson v. Hartford, 8 M. & W., 806; Dwight v. Ins. Co., 103 N. Y., 341; Wallingford v. R. Co. (S. C.), 2 S. E., 19; Folsom v. Cook (Pa.), 9 Atl., 93; Eaton v. Smith, 20 Pick., 150; Scanlan v. Hodges, 52 Fed., 354; Gage v. Meyers, 59 Mich., 300.) The interpretation given the contract by the trial court is borne out by the facts and the situation of the parties, and the true and equitable account between them of their financial transactions.

It must appear that the complaining party has been injured or prejudiced by the admission of immaterial or irrelevant testimony to justify the reversal of a judgment on that ground. (Holmes v. Goldssmith, 147 U. S., 150; Scoven v. State, 6 O. St., 288; Dickey v. Beatty, 14 O. St., 389; Dillon v. Russell, 5 Neb., 484; Kiewit v. Harris, 17 Neb., 249; Alpin v. Morton, 21 O. St., 536; Knox v. Noble, 25 Kan., 449; Detroit v. Brennan, 93 Mich., 338; Noyes v. Smith (Me.), 10 Atl., 462; McGonigle v. Victor &c. Co., 186 Mass., 310; Kaplan v. Boston G. L. Co., 177 Mass., 15; Warner v. Jones, 140 Mass., 216; Coal Co. v. Utley, 167 Mass., 558; Gilleland v. R. Co., 119 Ga., 789; Ins. Co. v. Thornton, id., 455; Ry. Co. v. Weathers, 120 Ga., 475; Harrigan v. Gilchrist (Wis.), 99 N. W., 909; Rhodes v. Halverson (Wis.), 97 N. W., 514; Montgomery v. Hanson (Ia.), 97 N. W., 1081; Fletcher v. Wakefield, 75 Vt., 257; Coal Co. v. Laquet, 198 Ill., 125.) The question as to the skill and capacity of Mr. Coble was in issue in the case. He introduced evidence of a particular kind to show that he was possessed of skill. The defendant introduced none to support his averments of want of skill on plaintiff's part. For the purposes of this case therefore it is immaterial whether the evidence introduced by plaintiff was incompetent or not. This would be clear upon principle since the plaintiff was entitled to succeed at all events upon the issue referred to, and he

could not more than succeed, no matter what evidence he introduced. The issue having been tendered, he was entitled to a full finding that he was possessed of skill as a cowman, and no proof of such skill could go farther with the jury than to give him the credit which this finding would give. (State v. Cincinnati &c. Co., 66 O. St., 182.)

Counsel's objection as to the correspondence is not technically correct. The court did not admit the letters in evidence, or any part of them, over the objection of the defendant. The court only said to the defendant, if you desire to read parts of those letters you may do so provided you read the whole of the letters; and upon that the defendant himself read the entire correspondence. The defendant made a general objection to all of the entire correspondence excepting such portions as he had marked and asked to read. It is incumbent upon the defendant to show that he was prejudiced by the ruling. The court below heard the trial, saw its conduct, saw what was the effect upon the jury as near as such things can be ascertained, and, upon its personal view, decided that the defendant was not prejudiced. The burden is upon the defendant here to show prejudice; not general prejudice, but direct prejudice to the defendant, and that issue has been found against him by the court below.

Again, the ruling of the court, as we have said, was not asked or made as to any separate part of any particular letter offered, but was general, and the exception was not as to the requirement to read any particular part of any particular letter, but was general as to all the parts now offered. The result is, under a well known principle, that if any of the portions of any of the letters offered were so connected with the portions which were actually offered by the defendant as to be a part of the same subject matter, then the exception is too general to be available and the connected part being admissible the ruling of the court would not be available error. And as it seems to us this principle goes so far that even

though particular portions of a particular letter were offered on the subject of the numbers of the cattle, and the particular portions of another letter offered on the subject of the care of the cattle, and particular portions of other letters on the subject of who was caring for the cattle and manner in which they were caring, etc., parts of other letters bearing upon these same subjects were admissible.

It is true that the defendant in his counterclaim avers that "the plaintiff still retains the title to a large amount of lands and land leases taken in his name and paid for by said company and which the plaintiff by said written agreement was obliged to transfer to the defendant." But it certainly could not have been intended by the defendant that these averments should state a cause of action for breach of contract to convey lands against the plaintiff. The allegation itself is that these lands and land leases were taken in the name of the plaintiff and paid for by the company, which is an averment that the defendant held the lands in trust for the company, in other words, was not the owner of the lands at all but merely the trustee of the legal title for the use and benefit of the company. And this is borne out by the contract which states that the lands mentioned, although the title rested in Coble, had been paid for "by the above mentioned Iron Mountain Ranch Company." Now it is clear that if these parties recognized that Coble held the legal title in his name, not as owner but as trustee for the owner, he was not selling the lands to the defendant. And the fact that the defendant became the owner of all or practically all of the capital stock of the company made no difference, because that company had a large amount of debts, aggregating more than $100,000.00 Therefore the company and the defendant were not the same if the personality of the corporation could otherwise be lost sight of.

Again, the allegation of the counterclaim does not state that the obligation of the plaintiff under the contract was to transfer the title to these lands to the defendant, but the contract is made a part of this particular defense, and the

contract does not say that these lands are to be transferred to the defendant at all but it simply provides "that John C. Coble is to transfer by good and sufficient deed all the real estate standing in his name on the records that was paid for by the above mentioned Iron Mountain Ranch Company and to transfer the leases of school lands standing in his name." Now the answer is that both the school lands and the deeded lands were paid for by the Iron Mountain Ranch Company. The stipulation is to transfer without saying to whom. Necessarily the transfer must be to the owner, and both the contract and the averment are that the owner is the Ranch Company. Moreover the defendant continuously used the lands after his purchase, and he was not damaged by the failure to convey.

Instructions are not to be taken singly and separately but together, and if the instructions as a whole fairly lay down the principles of law applicable to the case, that is all that is required. (Harris v. State, 155 Ind., 265; Musser v. State, 157 Ind., 423; Russell v. Grocery Co., id., 38; Feasley v. Bradley, 120 Ga., 373; Beattie v. Detroit (Mich.), 100 N. W., 574; Arbit v. St. Louis Co. (Mo.), 81 S. W., 484; Shanahan v. St. Co., 83 S. W., 783; Chicago &c. Co. v. Hanthorn, 211 Ill., 367; Caldwell v. Steamboat Co., 47 N. Y., 282; People v. McCallan, 103 N. Y., 587; Hickenbottom v. R. Co., 122 N. Y., 91; McAfee v. Dix, 91 N. Y. Supp., 464; Ry. Co. v. Cannady (Tex.), 82 S. W., 1069; Mfg. Co. v. Protection L. (Vt.), 60 Atl., 74; Virginia &c. Co. v. Luck's Admr., 103 Va., 427; City v. May (Colo.), 77 Pac., 1093; Mernin v. Cory (Cal.), 79 Pac., 174; Conrad v. Ry. Co. (Ind.), 72 N. E., 489; Reupke v. Stuhr &c. Co. (Ia.), 102 N. W., 509; R. R. Co. v. Tennessee, 191 U. S., 326; Ry. Co. v. Babcock, 154 U .S., 190; Western &c. Co. v. Ingraham, 70 Fed., 219; Kerr-Murray Co. v. Hess, 98 Fed., 56; Denver v. Porter, 124 Fed., 286; Adams v. Nantucket, 11 Allen, 203.)

We believe it is entirely established by the very great weight of authority that courts will not presume fraud.

Counsel in his argument confuses the words "presume" and "infer." Nothing is presumed from evidence. Presumptions are matters indulged by the court and· jury where no evidence is offered. To say that an instruction to the jury to the effect that they must not presume fraud is an instruction that they cannot infer fraud from the evidence, if it be sufficient for that purpose, is to confuse language. It is also held by the vast weight of authority that fraud cannot be shown by slight circumstances; that the proof of it must be clear and strong, and many courts say, satisfactory and conclusive. (Buck v. Sherman, 2 Doug. Ch., 176; Shroeder v. Walsh, 120 Ill., 403; Prichard v. Hopkins (Ia.), 2 N. W., 1028; Fick v. Maulholland (Wis.), 4 N. W., 527; Pogodzinski v. Gruger, 44 Mich., 79; Lavasser v. Washburne, 50 Wis., 200; Le Saulnier, v. Leow, 53 Wis., 207; Compare v. Lafferty, 50 Mich., 114; Mickham v. Morehouse, 16 Fed., 324; Bryan v. Hitchcock, 43 Mo., 527;Holland v. Anderson, 38 Mo., 55; Hord's Adner v. Colbert, 28 Gratt., 49; White v. Perry, 14 W. Va., 66; Herring v. Wickham, 29 Gratt., 628; Pexton v. Boyce, 1 Tex., 317; Ward v. Center, 3 Johns., 271; Henry v. Henry, 8 Barb., 588; Hill v. Reifsinder, 46 Md., 555; Pratt, v. Pratt, 96 Ill., 184; Mead v. Conroe, 113 Pa. St., 820; Duvall v. Coale, 1 Md. Ch., 168; Brown v. Brunt, 72 Me., 415; Farrar v. Churchill, 135 U. S., 609, (Wis.), 99 N. W., 465; Shaw v. Gilbert, 111 Wis., 165; Wallace v. Mattice, 118 Ind., 59; Hatch v. Bayley, 12 Cush., 27; Geib. v. Ins. Co., 1 Dill., 443; Wimer v. Smith (Ore.), 30 Pac., 416; Sanborn v. Stetson, 2 Story, 481; Maxwell Land Grant Case, 121 U. S., 125; Lalone v. U. S., 164 U. S., 255; U. S. v. Min. Co., 128 U. S., 673; Coal Co. v. U. S., 123 U. S., 307; Kansas &c. Co. v. Rammelsberg (Kan.), 50 Pac., 446; Gaines v. White (S. D.), 47 N. W., 524; Davis Est. (Mont.), 25 Pac., 105; Shultz v. Hoodland, 85 N. Y., 464; Jones v. Simpson, 116 U. S., 609; Zucker v. Karpeles, 88 Mich., 413; Babbitt v. Dotten, 14 Fed., 19; 1 Bump on Fr. Conv., 585; 1 Story Eq. Jur., 190.) Tested by that principle the instructions were not subject to any reasonable objection on the part of the defendant below.

It is complained that instruction No. 1 required the defendant to prove all of the fraudulent representations charged. We do not think the instruction standing alone is susceptible of the construction claimed by counsel. Certainly it is not when taken in connection, as it must be, with the other instructions. Again, it is claimed that the instruction limits the jury to active misrepresentations. The instruction does not pretend to define misrepresentations at all. It leaves that for the other instructions, and instructions No. "5" and No. "7," given on behalf of the defendant, clearly define the word "misrepresentation" which is used in the plaintiff's instruction No. "1" and stated to the jury with the utmost clearness that this term includes not only active misrepresentations, not only misrepresentations by words, but misrepresentations however conveyed, by words or signs or otherwise, and further that silence when the plaintiff should have spoken was itself a misrepresentation, that failure to correct a delusion into which the defendant's mind had entered was itself a misrepresentation. It was not incumbent upon the court to reiterate the definition of the term "misrepresentation" every time it felt called upon to use that term.

The fourth instruction is not capable of the construction that it requires that the defendant must have believed in and relied upon all of the representations. The jury could not have been misled by the fifth instruction. The instructions did not require that the jury should consider everything in all the letters; but reasonably understood by intelligent men, as the jury must be assumed to have been, they required the consideration only of the material and relevant parts of the letters.

The alleged newly discovered evidence, upon which a new trial was asked, was in reality not newly discovered, and some of it would not have been at all material. Motions for new trial on the ground of newly discovered evidence are to be received with caution, and there should be a reasonable probability that such evidence will produce a differ-

ent verdict, such a motion is addressed to the sound discretion of the court; and appellate courts will not reverse a judgment for the denial of such a motion unless the newly discovered evidence is of such a character, and of such importance that it would reasonably change the verdict. It must not be cumulative. (Conradt v. Sixbee, 21 Wis., 288; O'Hara v. R. R. Co., 36 N. Y. Supp., 567; Jackson v. Swope, 33 N. E., 909; Childs v. Lanterman, 95 Cal., 369; Klockenbaum v. Pierson, 22 Cal., 160; Thisler v. Miller (Kan.), 36 Pac., 1060; Broat v. Moore (Minn.), 47 N. W., 55; Morgan v. Bell (Kan.), 21 Pac., 255; Jones v. Tucker (Ala.), 31 So., 21; Barber v. Maden (Ia.) 102 N. W., 120; Lumber Co. v. Pasey (Ark.), 85 S. W., 1127; Arnold v. Skaggs, 35 Cal., 684; Bertram v. State (Ind.), 69 N. E., 479; Pelly v. Ry. Co. (Tex.), 78 S. W., 542; Kennedy v. Plank (Wis.), 97 N. W., 895; Kosmerl v. Mueller (Minn.), 97 N. W., 660.)

SCOTT, JUSTICE.

Plaintiff in error who was defendant below and who will hereafter be referred to as the defendant, seeks to reverse a judgment obtained against him by the defendant in error, who was the plaintiff below and who will be referred to as the plaintiff, in the District Court of Albany County for the amount claimed to be due upon two certain promissory notes.

In 1896 the plaintiff, Coble, applied to the defendant, Bosler, for a loan, and as a basis of credit therefor furnished the defendant with a statement of the financial condition of the Iron Mountain Ranch Company, and of which company Coble was a stockholder. This company was a corporation organized under the laws of the State of Nebraska with a capital stock of three hundred shares of the par value of one hundred dollars each, and doing business at or in the vicinity of Iron Mountain, Wyoming. One hundred and fifty shares were owned by Coble and a like number of shares were owned by one W. E. Lawrence. The object and purpose of

the corporation was to conduct a general ranching and live stock business, and to purchase, own and control such land and property as was necessary and incident to the successful running and operation of such business. The gross value of the property owned at the time by the company as shown by this statement was $53,925.00; its indebtedness was $14,-716.00, leaving the net value of the property $39,209.00. It was also represented in this statement that the business had been conducted for a number of years, and that there had not been a loss any one year to exceed one per cent of the stock ranched. The acquaintanceship of the defendant and plaintiff had extended over many years, both being reared in the same locality. The result of the negotiations was that the defendant loaned the plaintiff the sum of ten thousand dollars, taking his promissory note therefor; a part of the sum so represented by this note being unpaid was cancelled at the time the notes here sued upon were given. Soon after the loan was made and during the same year, i. e. 1896, Coble, Bosler and Lawrence formed a co-partnership, Bosler taking one-half interest, for the purpose of raising cattle and engaging in the general live stock business. This partnership continued until 1898 when Bosler purchased the interest of Lawrence in the co-partnership and also one-half of his stock in the Iron Mountain Ranch Company, his remaining stock being purchased by Coble, the corporation in the meantime having been reorganized as a Wyoming corporation. The relative interests of the parties in their business dealings being thus fixed, remained so until Bosler bought out Coble's interest both in the co-partnership and his stock in the corporation, and in payment therefor gave the notes sued on and upon which judgment was recovered; that is to say, Coble owned three-fourths of the capital stock of the Iron Mountain Ranch Company, and a one-quarter interest in the co-partnership, while Bosler owned one-fourth of the capital stock of the corporation and a three-fourths interest in the co-partnership property and business. The cattle and ranch business was under the personal supervision of Coble, he reporting the conditions

of weather, expenses, increase and losses of cattle from time to time to Bosler who resided in Pennsylvania. Bosler made occasional trips to the ranch in Wyoming, and kept the books and accounts of both the corporation and the co-partnership from the reports of sales, losses, calf brandings, expenses, &c., furnished him by Coble.

In 1903 defendant purchased plaintiff's interest in the co-partnership, and also his stock in the corporation, and in payment therefor gave his promissory notes to plaintiff in the sum of twenty-five thousand dollars and in addition cancelled all indebtedness owing to him or to the company by plaintiff. Ten thousand dollars was paid upon these notes, and upon failure and refusal to pay the balance and interest, this action was instituted. The execution and delivery of the notes was admitted, but payment contested upon the grounds: First, it was alleged that the notes were by the terms of the written contract of sale to be paid out of the proceeds of the sale of the cattle; and second, by way of counter-claim for damages by reason of alleged false representations as an inducement and upon which the defendant claims he relied in making the contract, and also for damages for an alleged breach of the contract.

The case was tried to a jury and a verdict for the full amount claimed on the notes and interest returned for the plaintiff. It is conceded that there is sufficient evidence to sustain the verdict, and if the rulings of the court, on matters hereinafter considered, are correct or were not prejudicial to defendant the judgment must stand.

1. The court sustained in part and denied in part defendant's motion to strike out alleged new matter contained in the reply and answer of plaintiff.

So much of the order as is material for our consideration is as follows: "And the court having heard the argument of counsel and being fully advised, it is now ordered that the said motion be sustained, and that the following matters contained in the reply and answer of the plaintiff be stricken out in so far as the same may be ground for affirmative re-

lief to the plaintiff; but that the said matters be permitted to stand as defensive matters to the set-off and counter-claim contained in the answer and cross petition of the defendant," and then follows the matters so referred to. It is urged by defendant that these matters even though limited by the order to a particular purpose, went to the jury with evidence in support of them and that he was thereby prejudiced. The motion to strike presented a legal question for the court, and was made long before issue was joined, and consequently before there was anything for a jury to pass upon. The question as to whether there was irrelevant evidence of a prejudicial character in connection with these allegations submitted to the jury is disposed of in the conclusion reached upon another branch of the case. Matter in a pleading is said to be irrelevant "which has no bearing on the question in dispute;" or "something out of which no cause of action could arise between the parties in the particular suit;" or "where it does not affect the subject matter in the controversy and can in no way affect or assist the decision of the court." (The President, &c., of Lee Bank v. Kitching, 7 Bosw., 664; 11 Abb. Pr., 435.) At the time this ruling was made, neither party had demanded a jury nor could they do so, as the issues had not been made up. The court was not advised as to whether or not the case would be tried by a jury. It was also contended upon the hearing that this order was neither appealable nor reversible. Under our system of appellate procedure the case is before us upon the entire record, and our attention is directed to the alleged error in denying the motion to strike. We deem it our duty to review the question, but viewed as an abstract proposition of law and for the reasons stated, the order, though it may be erroneous, is not prejudicial and therefore not ground for the reversal of the final judgment.

2, At the time of the execution of the notes a contract was entered into between the parties, so much of which as is germane to the issue is as follows: "Now, therefore,

said John C. Coble has sold to said Frank C. Bosler all his interest in the corporation and partnership set forth above and hereby sells and transfers these interests to Frank C. Bosler for and in consideration of the payment to him of twenty-five thousand dollars ($25,000.00), receipt of which is hereby acknowledged and for the further consideration the agreement of said Frank C. Bosler to sell all of those properties for the prices as follows: for all lands, including buildings, improvements of whatsoever nature, all ditches, aqueducts and water rights connected with the land and all equipment and household furniture and supplies thereon sixty-eight thousand dollars ($68,000), for work and saddle horses and mares forty dollars ($40.00) each, for steers three years old and over and dry marketable cows such prices as they will bring on the market, for other cows twenty-five dollars ($25.00) each, calves thrown in, for two-year-old heifers twenty dollars ($20.00) each, for one-year-old heifers sixteen dollars ($16.00) each, for two-year-old steers twenty-eight dollars ($28.00) each, for one-year-old steers twenty dollars ($20.00) each, bulls fifty dollars ($50.00) each, and after deducting from the proceeds of these sales the sum of two hundred fourteen thousand nine hundred twenty-five dollars ($214,925) with interest at six per cent from May 1st, 1903, until paid and twenty-five thousand dollars ($25,000.00), the sum already paid, to pay to said John C. Coble forty (40) per cent of the net proceeds."

It is urged and contended by the defendant that the $25,000 evidenced by the promissory notes was to be paid out of the net proceeds of the cattle after he had paid to himself the sum of $214,925.00 and interest. A careful reading of the contract does not bear out his contention. Indeed, more apt words could not be chosen to express what was in the minds of the parties at the time. The payment by notes obligatory was an absolute payment, and the excess over and above the amount reserved to Bosler and the amount of these notes for which and at prices the prop-

erty and cattle were to be sold as per the conditions of the contract was to be divided in the proportion of forty per cent to Coble and sixty per cent to Bosler.

The construction of this contract, its terms being clear and there being no ambiguity upon its face, was one of law, and therefore for the court. No evidence of conditions existing at the time of its execution could make its meaning clearer than the words used in the contract by the parties to express their intention.

In Balch v. Arnold, 9 Wyo., 27, this court among other things says: "And the object of such construction must be to ascertain the intention of the parties; first, by an inspection of the deed itself, not only so far as would enable the trial court to inform itself of the language employed, but also to ascertain if upon the face of the original instrument anything appeared which would serve to illustrate such intention; and second, by hearing any competent evidence which might be offered tending to inform the trial court of the situation of the parties at the time the instrument was executed as further illustrating the intention of the parties at the time." In Thompson v. Wheatland Mer. Co., 10 Wyo., 86, it was in doubt on the face of the contract as to whether certain payments should be made out of a particular fund and this court held that it was proper not merely to consider the language of the contract, but also to consider evidence of the circumstances of the parties, the situation of the properties, and other facts tending to explain the sense in which the language of the contract was used. These two cases refer to the adopted and approved method of construing a contract which by its terms is ambiguous or its meaning not clear. Where, however, the contract is not ambiguous, its meaning apparent and the intention of the parties clearly expressed, it is error to resort to proof of collateral facts and surrounding circumstances which would only serve to affirm that already expressed or give it a different meaning by parol testimony. The trial court properly refused to submit the question of the construction of this contract to the jury.

3. Defendant assigns as error the granting of a temporary injunction restraining him, pending the action, from disposing of any of the property of the Iron Mountain Ranch Company or of the firm of Bosler & Coble. The record shows that an injunction was granted conditionally and not to take effect until the plaintiff filed an undertaking in the sum of $10,000.00 with surety to be approved by the clerk of the court. Such injunction or restraining order never became operative as no bond or undertaking was ever filed. Defendant was not injured by the order, and is not therefore in a position to complain. (Diehl v. Friester, 37 O. St., 473.)

4. The defendant sought to recover damages for an alleged breach of the contract in this, that plaintiff had failed and refused to transfer titled and leased land which he held as trustee for the corporation to defendant as trustee for the same purpose, and which he had obligated himself to do. Plaintiff during the trial produced the conveyances and tendered them in open court and held himself in readiness thenceforth to deliver them to the defendant. No objection was made to the form, sufficiency or manner of execution of these transfers, but it is claimed that some of the leases for state lands had expired during the time which had elapsed since the execution of the contract. The evidence shows that the possession and occupancy of these lands by the corporation was continuous after, as it had been before, the sale, and that such possession, use and occupancy was in no wise disturbed. The failure by plaintiff to assign the leases did not interfere with or prevent the corporation from applying for and obtaining a renewal of the leases, something which the company would have to do if it desired to continue the use and occupancy of the lands as lessee, either under a lease to a trustee in its favor or to itself. At most the damage under the facts shown for this breach of the contract could be but nominal, and as such did not constitute a counter-claim or set-off to plaintiff's cause of action.

5. A great many letters between the parties, extending over many years, were introduced in evidence. When the

letters for 1896 were produced and identified, counsel for defendant made the following offer, viz: "For the purpose of showing the representations made from time to time by the plaintiff as to the condition of the herd, the weather, the losses, the increase and other like facts alleged in the cross petition, so much of these letters are offered in evidence by the counsel for defendant." Whereupon counsel for plaintiff insisted that all of the letters be read in their entirety and the court so ruled, to which ruling exception was duly taken. The letters were then read to the jury. The same proceeding was had with reference to the letters of each succeeding year during the continuation of their business relations, the record showing the same offer, ruling and exception. Much time was consumed in reading these letters.

In an action for false representations any evidence is competent which proves or tends to prove the existence of any inducement to rely upon them. In this case one of the inducements as testified to by the defendant was that he had confidence in the plaintiff. These letters in their entirety, though not so offered, showed the confidential personal and business relations existing between the parties, which was proper for the jury to consider in determining whether the plaintiff relied upon the parts of the letters which were offered and also competent as corroborative of defendant's testimony that he had relied upon the alleged false representations by reason of the confidence he had in the plaintiff at the time they were made. It is urged in the argument that the jury were wearied and worn out from listening to the reading of them. The record does not show that the defendant at any time called this matter to the attention of the court, which he might have done after a reasonable number had been read, and thus have relieved the jury from listening to a mass of testimony cumulative in character and which would only tend to encumber the record. The ruling of the court does not appear to have been prejudicial to the defendant.

6. The plaintiff introduced in evidence over the objection of defendant a letter from the former to the latter dated Omaha, Nov. 11th, 1902, which contained, among other things,: "I wrote you Nov. 1st telling you conditions on the range and my plan to move steers to feed for winter in Neb. Not to corn feed cattle but to carry them through the winter." "The grass has not grown and there is now absolutely no grass on the range for cattle. We cannot possibly winter all the cattle on the grass that we have and provision for their care must be made at once. For the past six weeks I have been in correspondence with parties in Neb. where I could have the steers wintered. I wanted to make all preparation for them and when you came out would see that I met the condition sensibly and for the best interests of all concerned. I realize that I should go at once and look at these places and ship to them without any delay. But your letters and telegrams block me for the present in any move of this kind. You refuse to send me the money and it will take considerable to ship these cattle to points in Neb. But they will be closer to market and so much more valuable to us." "You say in your letter: 'You propose to arrange to winter stock in Neb. It is really a great surprise to me for I remember how greatly you were opposed to this plan when Lawrence so strongly urged it.' Frank, the situation now is entirely different. We had then feed in abundance. Now we have none." "What I want to do for the cattle I know is the very best thing for them. But you prevent me from taking any action and a longer delay may cause us heavy losses. I may not be able to get places for the cattle at a later date." "Come out and see where our money has gone to. See the work that has been done on the ranch. Instead of you helping me out of the present situation before us you block me from doing anything." Much evidence was also introduced over objection upon the subject of plaintiff's reputation as a cow man. In the fourteenth instruction given at plaintiff's request and over defendant's objection the jury were instructed that the plaintiff could not be held responsible as

manager of either the corporation or the partnership for losses which were the result of the direct interference by defendant with any well considered plans of the plaintiff such as wintering the cattle in Nebraska owing to shortage of feed and hay.

In his second defense and counter-claim the defendant does not question the execution of the notes nor the consideration for which they were given. He does not seek to cancel the notes and the contract of sale for the alleged fraud practiced upon him, but he affirms the contract which he claims he was induced to make by the alleged false representations. It was also alleged that although plaintiff so represented he was not in truth and in fact a person of much skill and good judgment in the kinds of business carried on by the corporation and firm; was not giving and did not give continuous and effective or skillful personal attention to the management of said business; that the numbers and values of the live stock decreased under the management of plaintiff at a rapid rate; that the care, skill and attention employed by the plaintiff in the management of and care of the live stock were not such that the losses were small, but were such as to aggravate and cause more than usual and average losses and which were greater than those of other herds in neighboring regions. It is also alleged that from time to time plaintiff reported to defendant the conditions of the range, stock and losses and that defendant who kept the books and records made accurate entries thereof and that from the records so made from such reports it appeared that on the 20th day of April, 1903, the corporation owned and had upon its ranches and range 2,595 head, and the firm owned and had upon the same ranches and range 3,840 head, making a total of 6,435 head of cattle after deducting the number sold and five per cent loss for each year which the plaintiff had represented in his reports as excessive. It is also alleged that at the time of executing the notes and contract of sale, and for the purpose of inducing the defendant to make the purchase, the plaintiff represented to the defendant that the records

were correct and could be relied upon, "that the reports
and representations previously made were true and that the
cattle of said corporation and firm aggregated about 7,000
head and that they would count out the full number called
for by the records;" * * * "that it was not practical nor
possible to count the cattle and that they would have to re-
ly upon the books for the numbers," and that relying upon
these representations defendant did purchase plaintiff's in-
terest in the corporation and firm on the terms and condi-
tions of the written contract. The alleged false reports
incorporated in and from which the records were made up
extended over many years and were continuing in nature
from the commencement of the business relations of the
parties down to the time when they became as is alleged an
inducement to defendant to make the purchase. To main-
tain his contention the defendant introduced in evidence the
letters already referred to, in whole or in part, including
the dates respectively upon which they were written. Not
only were the contents of the letters bearing upon these re-
ports admitted in evidence, but it was contended and sought
to be proven that these statements were false; and it neces-
sarily follows that if such contention be correct that they
must have been false at the time they were written. The
defendant thus raised the issue in the evidence of the falsity
of these reports at a time long prior to any thought or de-
sire of the plaintiff to sell his interests, but on the con-
trary, when by the evidence he desired to remain in and
continue the business. The plaintiff had a right to meet
and explain by competent testimony any inference to be
drawn from or phase of the case reasonably arising or grow-
ing out of such evidence. As bearing upon this question it
was proper to inquire into the surrounding conditions, the re-
lation of the parties and what if any motive actuated the
plaintiff to make any other than true reports at these times.
If the losses were greater than reported and so known to
him at the time, then his desire to continue the business as
gathered from his letters, and to avoid any feeling of dis-
trust by defendant as to his skill and ability in handling the

business, or to prevent being charged with negligence would each and all be an incentive to report the losses less than they actually were. The issue of negligence was inferentially raised in the pleadings and also in the evidence, and as bearing upon this issue the evidence objected to was admitted; and also at the request of the defendant the jury were instructed that if they found that the plaintiff falsely represented himself to be a person of much skill and good judgment in the business owned by the firm and company, or falsely represented that he was giving continuous and effective and skillful personal attention to the management of said business and property, and that the defendant relied upon such representations, then their verdict should be for the defendant. Under this instruction if the jury believed from the evidence that the losses were greater than the average loss among other herds of cattle similarly situated in neighboring regions, and also that the plaintiff possessed the ability and skill to handle that kind of a business they might reasonably under the pleadings and evidence attribute such excess in loss to plaintiff's negligence. It was evidently upon this theory of the case that the instruction complained of was given. In effect the jury were cautioned that a recovery could not be had against the plaintiff as manager, for he was not sued in that capacity, and that if he was prevented by any act of the defendant from doing that which good judgment dictated for the proper care and preservation of the stock, that losses resulting therefrom could not be attributed to either want of skill or negligence on his part. The jury were not told, nor was the idea conveyed by the instruction, that these matters would in any wise prevent them from finding for the defendant upon the main issue. It was not therefore prejudicial. The instructions presented the case to the jury fairly and indeed as beneficially to the defendant as the law permits.

7. The defendant assigns as error the denial of his motion for a new trial on the ground of newly discovered evidence material for him and which he could not with rea-

sonable diligence have discovered and produced at the trial. The motion was heard upon affidavits.

1. The defendant claims that he could prove upon a new trial by one Lawrence, who at the time owned a one-quarter interest in, and who kept the books of, the Iron Mountain Ranch Company, that in 1896 under the instructions of the plaintiff he kept an extra and false record which showed the number of cattle owned by the company as 1,937, whereas by the true record there were not to exceed 1,500 head. It was at this time and as claimed upon the showing of the false statement that plaintiff obtained the loan of ten thousand dollars from defendant. Defendant did not purchase any interest in the corporation until 1898 and both he and plaintiff testify that before he made such purchase the corrected number was given by plaintiff, viz: 1,500. We do not consider this evidence material upon the issue as to whether the sale of plaintiff's interest which took place April 20, 1903, was or was not fraudulent.

2. Upon the showing made the defendant was not deprived of the evidence of one Swank as to what it is claimed plaintiff said at the ranch on April 18, 1903, as to the pending sale except by reason of his own failure to exercise reasonable diligence to obtain the same. He knew this person was at the ranch at the time the negotiations were pending, and plaintiff's counter affidavit which is undisputed shows that defendant was much in the company of the proposed witness before and during the time of the trial.

3. It was proposed in opposition to the evidence of plaintiff to show by Messrs. Burke & Clark that the plaintiff never transferred or assigned the land scrip or scrip land held by him for the Iron Mountain Ranch Company to them or either of them. As to the understanding of plaintiff as to what constitutes an assignment of the scrip or scrip lands or whether in fact he did so or not is immaterial in view of what we have already stated on that branch of the case.

No prejudicial error appearing in the record the judgment will be affirmed.        *Affirmed.*

POTTER, C. J., and BEARD, J., concur.