PHYLLIS J. JOHNSON, formerly
  PHYLLIS J. BUTTS,

*Plaintiff and Appellant,*

vs.

SCHOOL DISTRICT NO. 14, PLATTE COUNTY,
  WYOMING,

*Defendant and Respondent.*

(No. 2575; December 2nd, 1952; 250 Pac. (2d) 890)

408

For the plaintiff and appellant the cause was submitted upon the brief and also oral argument of Paul B. Lorenz of Cheyenne, Wyoming.

For the defendant and respondent the cause was submitted upon the brief of Jones & Jones, of Wheatland, Wyoming, and oral argument of Mr. William R. Jones.

410

## OPINION

ILSLEY, Justice.

A school teacher, the plaintiff and appellant, brought this action against a School District, the defendant and respondent, to recover the sum of $2,600.00 and interest, claimed to be due under a contract whereby the plaintiff was to teach school for the defendant. A demurrer was interposed to the amended petition of the plaintiff by the defendant. The demurrer was sustained by the trial court and the plaintiff refused to plead further, whereupon an order of dismissal was entered. Plaintiff claims the court erred in dismissing her law suit and brings her case to this Court of appeal. the specifications of error, two in number, complaining of the trial court's order, (1), in sustaining the demurrer and, (2), in entering the Order of Dismissal, will be considered together.

Briefly stated, the pertinent provisions of the amended petition recites: That Phyllis J. Butts and Phyllis J. Johnson, the plaintiff, are one and the same person who on April 10, 1950, signed the contract sued upon herein and she agreed to teach school for the defendant District for a period of thirty-eight weeks beginning September 4, 1950 and ending about May 26, 1951, for

the sum of $2,600.00. A copy of the Contract is attached to the amended petition as an exhibit.

It is alleged in the petition that as a result of her marriage, Phyllis J. Butts became Phyllis J. Johnson on the second day of September, 1950. Appellant contends that the trial court, by sustaining the demurrer and by assuming the authority to interpret the language of the 7th provision of the contract between the parties, not only denied the plaintiff her right to relief under the contract but also precluded her from proving on trial, "the actual intent of the parties."

The 7th provision of the contract is as follows: "That if the teacher shall marry during the life of this contract, this contract shall automatically terminate, and such teacher shall receive no further salary, unless reinstated by board."

In support of plaintiff's position her counsel states that the interpretation of this language is purely a question of fact and not one of law; that the contract being an integrated one, plaintiff was entitled to introduce evidence of conditions and circumstances existing and surrounding the execution of the contract to show the true intent and meaning of the phrase contained in the 7th provision thereof, which states, "during the life of this contract." Appellant cites Corbin on Contracts Vol. 3, pgs. 38, 50, 52, 53, 119, 317, 341; Restatement of the Law of Contracts pgs. 307, 341, 317; Balch vs. Arnold 9 Wyo. 17, 59 P. 434; Bosler vs. Coble 14 Wyo. 423, 84 P. 895; Denio Milling Co. vs. Malin 25 Wyo. 143, 165 P. 1113; Pacific Wyo. Oil Co. vs. Carter Oil Co., 31 Wyo. 314, 226 P. 193. While we agree with the principles of law cited by counsel for the plaintiff when applied in a proper case, we cannot agree that they are applicable in this case. We are of the opinion that the language of the provision 7, supra, is clear and unambiguous and that it means what it

says; that it was the duty of the trial court to interpret the phrase as a matter of law. The plaintiff must have married during the life of the contract. The contract came into being when it was signed by the plaintiff on April 10, 1950 and was delivered to the defendant. Section 2 on page 4 of the contract provides:

"That said Board of Directors may, on failure of said teacher to return this contract to the Clerk of this district, within ten days after delivery hereof to said teacher, employ a teacher instead of the applicant so in default."

The offer was made by defendant and accepted by the plaintiff when she signed and returned the contract to the defendant School Board. It then became the contract between the parties, and all of its provisions were binding upon them.

What does the phrase, "during the life of this contract", mean? In the sense as used in this contract "life" has a well defined meaning. The Revised and Enlarged Century Dictionary, Vol. V, p. 3441 states: Life 4. "Duration of existence or activity in general; term of continuance, usefulness or efficiency; the *time during* which any thing lasts; or has force or validity; as, the life of a machine; the *life of a lease;* the enterprise had a short life."

In this respect the lexicographers agree upon the definition of "life" because it is stated in Websters New International Dictionary, Second Edition Unabridged:

"The period of duration of anything that is conceived of as resembling a natural organism in structure or functions; as, the *life* of a state, a machine. Specif., the period during which a material object if fit for use or during which it efficiently performs its functions;— measured in actual time; as, the life of an iron girder is 40 years; or the number of times it may be used; as, the life of a gun barrel is 9,000 rounds. f. The period

during which a statute or other legal enactment is in force; as, the *life* of an execution. * * * "

See also a discussion of the meaning of the phrase, "during the life of this agreement" by the Supreme Court of Montana as used in a defeasance contract, in Bartels vs. Davis (Mont.) 85 P. 1027-1028.

It must be remembered that plaintiff refused to amend her petition after having been allowed time within which so to do. We must assume then that she preferred to continue her action upon the contract alone and that there were no facts in existence which would justify an amendment. As stated by this court in Tracy v. School District (Wyo.) 243 P. (2d) 932 at p. 938:

"Demurrer or exception sustained. When a demurrer or exception has been sustained it is usually held that all reasonable presumptions will be made in favor of the propriety and sufficiency of the demurrer and against the pleading demurred to, which will be construed most strongly against the pleader, particularly where he refuses to amend, in which case it will be assumed that facts justifying an amendment do not exist." 5 C.J.S. Appeal and Error, §1540, p. 301.

We conclude that the provisions of the contract are plain, clear and unambiguous and susceptible of only one interpretation and that plaintiff would have no right to introduce in evidence any collateral facts. As this Court has said:

"We must not lose sight of the rule, fundamentally embedded in our jurisprudence, that, though testimony may frequently shed light on the terms employed, a contract, once reduced to writing, cannot be contradicted, altered, added to, or varied by parol or extrinsic evidence. 22 C.J. 1070; 6 R.C.L. 839; Jones, Ev. (2nd Ed.) Sec. 1539." Holly Sugar Corporation vs. Fritzler 42 Wyo. 446-477, 296 P. 206.

The term, "during the life of this contract", is a plain, simple statement, clear in meaning. To argue against it and permit evidence to explain it would only serve to raise a doubt about it when none exist. Where the phrase is already clear why try and make it clearer? In the process it would be possible for the phrase to become dark and murky. As this court has said:

"Where, however, the contract is not ambiguous, its meaning apparent and the intention of the parties clearly expressed, it is error to resort to proof of collateral facts and surrounding circumstances which would only serve to affirm that already expressed or give it a different meaning by parol testimony." Bosler v. Coble 14 Wyo. 423-447, 84 P. 895.

"The construction of this contract, its terms being clear and there being no ambiguity upon its face, was one of law, and therefore for the court. No evidence of conditions existing at the time of its execution could make its meaning clearer that the words used in the contract by the parties to express their intention." Bosler v. Coble 14 Wyo. 423-447. 84 P. 895.

See also 17 C. J. S. Sec. 296, pgs. 695-701, 12 Am. Jur. Sec. 227 pgs. 747-748, 12 Am. Jur. Sec. 228, p. 750.

We cannot see why there should be any misunderstanding of the wording of the 7th provision, supra. The provision in a teaching contract prohibiting the marriage of females is a familiar one commonly used and the legality thereof has been upheld. (See Grimison vs. Board of Education (Kans.), 16 P. (2d) 492). It seems to us that the parties to this contract knew, or should have known, the meaning of this provision.

Finding no error in the record the judgment of the district court for Platte County is affirmed.

*Affirmed.*

BLUME, C. J. and RINER, J., concur.