SADIE F. HALL, Appellant, v. FIRST NATIONAL BANK OF KENMORE, N. Y., Respondent.

Fourth Department, May 8, 1929.

*John W. Van Allen* and *Sunderland P. Gardner* [*Selby G. Smith* of counsel], for the appellant.

*Harold V. Cook* [*Charles B. Wheeler* of counsel], for the respondent.

TAYLOR, J. This action was brought to restrain defendant bank from selling 100 shares of common stock of the American Radiator Company, and to compel defendant to return the stock to plaintiff, who owned it. On March 17, 1925, when a loan of $4,000 was made by defendant to plaintiff's husband, Frank E. Hall, he delivered the stock to defendant. Cotemporaneously, a permit of hypothecation and a power of attorney, both signed by plaintiff, were delivered to defendant.

The permit of hypothecation was a declaration that Frank E. Hall had the consent and authorization of plaintiff to pledge the stock as collateral security for all loans, indebtedness, liability, etc., of Frank E. Hall. In addition to other recitals of minor importance, the document contained the following: " I expressly ratify and agree in advance to any and all agreements which said Frank E. Hall may make with the Bank regarding the use of said collateral for any loan or loans to . . . . . . . . ."

Then followed a statement in which plaintiff authorized the bank to sell said securities in accordance with the terms of any notes " which said . . . . . . may give to represent . . . . . . loans, or with the terms of any agreement that . . . . . . may make with said bank in respect of the sale of said securities." The power of attorney was in the ordinary general form, to the effect that plaintiff sold " . . . . . . shares of the . . . . . . stock of the . . . . . . standing in . . . . . . name on the books of the said . . . . . . and do hereby constitute and appoint . . . . . . true and lawful attorney irrevocable for . . . . . . * * * to sell, assign, transfer and set over," etc. None of the blanks in either instrument was ever filled in.

The defendant's claim is that it had the right to retain the stock and sell it in satisfaction of judgments obtained by it in April, 1927, against the plaintiff's son, Charles W. Hall (sometimes called Wesley Hall and C. Wesley Hall), amounting to over $11,000.

The learned trial court entered judgment dismissing plaintiff's complaint upon the merits.

The record presents the following facts:

Wesley Hall was the main owner and operator of two business corporations, the Hall Electric Corporation and Hall-Boehringer Corporation, Inc. Prior to May 10, 1924, defendant held various shares of stock belonging to plaintiff and her husband as collateral security for loans. On that date Frank E. Hall withdrew from the bank thirty shares of American Radiator Company preferred stock standing in the name of plaintiff. On March 31, 1925, he withdrew twenty shares of the same kind of stock which stood in his own name. Defendant contends that on April 14, 1925 (nearly a year after the withdrawal of plaintiff's thirty shares of stock), a " substitution agreement " was made orally between the bank and plaintiff (through her husband), to the effect that the shares of stock in suit should remain at defendant's bank to cover any indebtedness which Frank E. Hall might have or any indebtedness of either of the corporations mentioned. On that day Frank E. Hall withdrew from the possession of defendant one hundred and twenty shares of American Radiator common stock and ten shares of the stock of the Buffalo General Electric Company. Ninety-two shares of the American Radiator stock belonged to plaintiff and all the rest of the stock withdrawn belonged to Frank E. Hall. There is no testimony in the record that plaintiff's ninety-two shares of American Radiator stock were ever held as collateral to any loans of Wesley Hall or his corporations.

On March 17, 1925, nearly one month before the date of the " substitution agreement," Frank E. Hall had borrowed from defendant $4,000, and at the same time, besides delivering to defendant the permit of hypothecation, had put up as collateral the stock in suit, viz., the one hundred shares of American Radiator common belonging to plaintiff. At that time Frank E. Hall was indebted to defendant in the sum of $1,000, and was indorser on a note for $850 of his other son, Porter Hall. On May 15, 1925, Frank E. Hall paid off his personal indebtedness of $5,000. He went to California in August, 1925, and then negotiated another loan which he paid off in September, 1926. On April 7, 1925, plaintiff had paid off all her loans. Defendant did not sue Wesley Hall till 1927.

Frank E. Hall testified that he told various directors of defendant that he had agreed to be responsible for one loan of his son Wesley in the sum of $4,000. He further testified that, as he was about to go to California, he had said that he was leaving the stock in

suit to cover Porter's loan and Wesley's loan and any other loans he might want to make after he got out to California.

There is testimony by bank officials that on the 14th of April, 1925, Frank Hall declared that the American Radiator stock in question would be sufficient to cover his indebtedness and any indebtedness of the Hall Electric or the Hall-Boehringer corporations; also, that on two occasions Frank Hall said that the Wesley paper was protected, that he had collateral up to protect it, and that he had put up the stock in suit for that purpose. All this testimony as to declarations of Frank E. Hall was under the objection and exception of plaintiff; and, being recitals as to past events and conditions, was inadmissible and incompetent as against this plaintiff. (*State Bank* v. *Brocton Fruit Juice Co.*, 208 N. Y. 492.) However, this testimony — and Frank E. Hall's own testimony relative to collateral for Wesley's loans — is of little importance, in view of the conclusions we reach that Frank E. Hall had no authority to represent plaintiff in pledging her stock as collateral for Wesley Hall or his corporations. Prior to and during all this period Frank E. Hall was a trusted director of defendant, and during a large share of the time was on defendant's books as a borrower, defendant holding various of plaintiff's and her husband's securities as collateral to the loans.

The terms of the permit of hypothecation and the power of attorney and the vacant spaces in them when they were delivered to defendant, deserve some comment. The blank spaces were permitted to remain such. Suppose it be assumed that when the instruments were delivered to Frank E. Hall, he had implied authority to fill in the blank spaces, and that had he done so in due time, and delivered them to the bank, plaintiff would have been bound as to all reasonable intendments on the theory of estoppel. (*Commercial Bank of Buffalo* v. *Kortright*, 22 Wend. 348.) This is open to doubt, the documents not being commercial paper. (*Levy* v. *Louvre Realty Co.*, 222 N. Y. 14, 20.) But even under the assumption mentioned, defendant cannot depend upon these documents. When delivered they were incomplete upon their faces. If the bank desired to obtain security for the notes of Wesley Hall or his corporations, through this permit of hypothecation or the power of attorney, it should have seen to it promptly that the instruments created that obligation. Defendant had full notice that the documents as delivered did not specifically pledge the stock for the corporation loans. They did not give the bank *carte blanche* to hold the stock, not only for the use of Frank E. Hall, but for use of the son's corporations, or any other person

whose name might at any time be inserted in the blanks by defendant.

A signature to an incomplete paper, wanting in any substantial particular, when no delegation of authority is conferred to supply the defect, does not bind the signer without further assent on his part to the completion of the instrument. (*Dutchess & Columbia County R. R. Co.*, v. *Mabbett*, 58 N. Y. 397, 400; *Richards* v. *Day*, 137 id. 183.)

When blanks are not filled in, they may be rejected as surplusage if the parties so intended. (*N. E. D. Holding Co.* v. *McKinley*, 246 N. Y. 40, 44.) And the intent must be gathered as an inference of fact from the whole setting of the transaction. (*Levy* v. *Louvre Realty Co., supra.*)

In the case at bar, by the terms of the permit of hypothecation, the plaintiff assented to no agreement which Frank E. Hall might make regarding the use of the collateral, other than for loans to himself, except for a loan to . . . . . . (which means "nobody"). The same reasoning applies to the power of attorney.

Since no writing is here obligating plaintiff to secure the corporation loans, she cannot be bound, unless the bank has proved that she otherwise authorized the pledging of her collateral for that purpose. We find no such proof in the record. If there was a "substitution" on March 17, 1925, by the deposit of the stock in suit with defendant, it was not for the stock of plaintiff which was later withdrawn on April 14, 1925; for plaintiff's stock then withdrawn had never been pledged for the son. And Frank E. Hall had no authority to substitute plaintiff's stock for his own for the benefit of Charles W. Hall.

We conclude that it is contrary to the evidence to find that plaintiff — either primarily or through ratification — ever pledged the stock in suit for the debts of her son or his corporations, or gave authority to any one else to do so, orally or in writing.

The judgment should be reversed on the law and facts, with costs, and judgment ordered for plaintiff as demanded in the complaint, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and CROSBY, JJ.

Judgment reversed on the law, with costs, and judgment directed for the plaintiff for the relief demanded in the complaint, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.