# Staunton

KATE DUGGAN V. JOE KREVONICK AND ROSA KREVONICK.

September 23, 1937.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston
and Spratley, JJ.

58

The opinion states the case.

*Leith S. Bremner, T. O. Campbell* and *Robert T. Winston,* for the appellant.

*George E. Haw* and *D. N. Sutton,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

In the fall of 1934 Charles Duggan, the husband of the appellant, owned fifteen acres of land on the Tappahannock highway, in Hanover county, on which were located a gas station, restaurant, or roadhouse, and a swimming pool, commonly known as "Duggan's Inn."

Duggan having defaulted on a deed of trust covering the property, it was foreclosed and the property purchased by one R. A. Ricks, who subsequently, in November, 1934, conveyed it to Joe and Rosa Krevonick.

Before the foreclosure sale Kate Duggan had been negotiating with the Krevonicks for the purchase of the property in the event that they, the Krevonicks, acquired it. These negotiations continued after the sale and resulted in the execution of the following writing, which is the subject of this litigation:

"This contract, made and entered into this the 1st day of January, 1935, by and between Joe Krevonick and Rosa Krevonick, husband and wife, parties of the one part and Kate Duggan, party of the other part.

"The parties of the first part own what is known as 'Duggan's Inn' in Hanover County, Virginia.

"It is convenanted and agreed that the parties of the first part do hereby give to the party of the second part an

exclusive option to repurchase or purchase said property at the price of $6,000.00 provided the party of the second part *provides* with the terms hereof within six months from the date hereof.

"If the party of the second part hereto on or before six months from the date hereof pay the sum of $500.00 in cash and interest on said $6,000.00 at the rate of 5% per annum, payable every three months, the insurance on said property, then and in that event the parties of the first part will convey to the said Kate Duggan with General Warranty of title the said property, known as 'Duggan's Inn' on the following terms, to-wit: Interest to be payable every three months at the rate of 5% per annum, and the remaining of the *principle* of $5,500.00 to be payable three years after date, with the privilege of renewal.

"Witness the following signatures and seals:

"JOE KREVONICK    (SEAL)
"ROSA KREVONICK    (SEAL)
"KATE DUGGAN    (SEAL)"

Kate Duggan had been in possession of the premises since the foreclosure sale and continued her occupancy after the execution of the contract. The Krevonicks procured a fire insurance policy of $4,000 on the buildings on the property and the premium thereon was paid by Mrs. Duggan. About the middle of April, 1935, Mrs. Duggan paid to the Krevonicks the interest instalment of $75 due on the first of the month.

In the latter part of April, 1935, the insurance company notified the Krevonicks that it was unwilling to carry more than $2,000 fire insurance on the buildings. Just why this reduction in the insurance was made does not satisfactorily appear from the record. The Krevonicks claim that Mrs. Duggan's occupancy of the premises constituted an unsatisfactory risk to the insurance company. Mrs. Duggan, on the other hand, claims that the reduction in insurance was due to the lack of fire protection and to the nature of the business conducted on the premises. Suffice it to say that neither contention is supported by legal evidence.

At any rate, on April 23, 1935, David Nelson Sutton, Esq., an attorney at West Point, Virginia, acting for the Krevonicks, wrote Mrs. Duggan of this reduction in the insurance. This letter further stated that she must either secure additional insurance in the sum of $2,000 on the buildings, or increase her cash payment by that amount, or else vacate the property.

Mr. Sutton's letter was referred by Mrs. Duggan to T. O. Campbell, Esq., her attorney, who, on May 1, wrote Mr. Sutton that under his (Campbell's) interpretation of the contract Mrs. Duggan was not obligated to procure any amount of insurance on the property but only "to pay the insurance premium when and as insurance has been secured by the Krevonicks."

Efforts to procure additional insurance on the buildings were unavailing and the Krevonicks demanded possession of the property. Mrs. Duggan refused to surrender possession and notified the Krevonicks that she would exercise her option to purchase the property, in accordance with the terms of the contract, on or before July 1, 1935.

On June 27, 1935, Mrs. Duggan tendered to the Krevonicks the sum of $575 in cash, covering the cash payment of $500 required by the contract and an interest instalment of $75 due on July 1, together with a note in the principal sum of $5,500 payable three years after date to the order of the Krevonicks, and the appropriate interest notes, payable quarterly, for the deferred portion of the purchase price. These notes were duly signed by Mrs. Duggan and were secured by a deed of trust of even date on the property, which was likewise tendered. This deed of trust was in the usual form except that the contract was therein set out *in extenso,* and instead of a covenant to keep the buildings insured Mrs. Duggan covenanted to "pay the premiums for any amount of insurance that the said Joe and Rosa Krevonick may secure on said property in accordance with the terms of the contract hereinabove transcribed as a part of this deed of trust."

Having tendered the above cash, notes, and deed of trust, Mrs. Duggan demanded of the Krevonicks a deed conveying the property to her. This was refused.

On July 12, 1935, the Krevonicks instituted an action of unlawful detainer against Mrs. Duggan before the trial justice of Hanover county for possession of the premises. Thereupon Mrs. Duggan filed her bill in the court below praying that the Krevonicks be enjoined and restrained from prosecuting the action of unlawful detainer, and, further, that they be required to specifically perform the alleged written contract whereby they had agreed to sell and convey the property to her. Upon a review of the depositions taken on behalf of the respective parties the trial court entered a decree in general terms denying the prayer of the bill and dismissing the suit. From this decree this appeal has been taken.

The first contention of the Krevonicks is that their signatures to the alleged contract were procured by fraud, while they were under the influence of intoxicants and in no condition to protect their rights. Furthermore, they claim to be illiterate and did not understand the purport of the instrument which they signed; that they were assured by Mrs. Duggan's attorney, Mr. Campbell, who prepared the document, that it "was merely a piece of paper and had no binding effect on them."

The evidence discloses that while the contract was dated January 1, 1935, it was actually written and executed on January 8th, under the following circumstances:

About eight o'clock in the evening Mrs. Duggan, her husband, and their attorney, Mr. Campbell, called at the home of the Krevonicks. The matter of the purchase of the property and the terms of sale were discussed at some length. While both of the Krevonicks took part in the negotiations Rosa Krevonick was the principal negotiator for her husband and herself. Mr. Campbell brought in a typewriter and made several drafts of the proposed contract before he was able to satisfy the Krevonicks. Finally the

instrument, in the form in which it has been above set out, was executed by the parties.

It is true that there was some drinking during the negotiations. Joe Krevonick produced whiskey and the Duggans brought in from their car some beer and ale. There is evidence that each of the parties took at least one drink during the evening. But there is not the slightest evidence that the Krevonicks, or either of them, were intoxicated. In fact, Mrs. Krevonick expressly testified that "nobody was drunk," although she said that her husband was "feeling good." Joe Krevonick testified positively that his wife had nothing at all to drink during the entire evening.

Therefore, there is not the slightest basis for the contention of the Krevonicks that they were so much under the influence of intoxicants as not to be in a condition to know or appreciate their rights. Compare *Taliaferro* v. *Emery*, 124 Va. 674, 98 S. E. 627.

Nor does a fair reading of the evidence support their contention that they were so illiterate as not to appreciate the purport of the instrument. As we have said, Mrs. Krevonick took the leading part in the negotiations in behalf of her husband and herself. It is undisputed that several drafts of the contract were made by Mr. Campbell before she could be satisfied as to the details, and she admitted having read the final draft of the instrument. Joe Krevonick admitted having discussed with Mr. Campbell at least some of the terms. It is admitted that the draft of the contract contained in the main the terms of sale which the parties had been discussing during the previous weeks.

There is not the slightest evidence in support of the contention that Mr. Campbell, Mrs. Duggan's attorney, misrepresented the purport of the instrument to the Krevonicks. On the contrary Mrs. Krevonick admits that Mr. Campbell suggested that the Krevonicks consult their attorney before signing the paper. He even offered to take them to see their attorney. This suggestion and offer were declined.

The instrument was prepared in duplicate and the Krevonicks were given a copy thereof. With this in their

possession, and with ample opportunity for its consideration, they raised no question about the contract for a period of nearly four months,—not until after a portion of the insurance had been cancelled in the latter part of April. Even then they did not question the validity of the contract. On the contrary they recognized its validity. They accepted from Mrs. Duggan the interest instalment of $75 due on April 1st and allowed her to pay the insurance premium.

The subsequent difference between the parties, as we have seen, was as to the proper interpretation and not as to the validity of the instrument.

The Krevonicks contended that under the terms of the contract Mrs. Duggan was bound to procure and pay for fire insurance in the sum of $4,000. Mrs. Duggan, on her part, claimed that she was bound only to pay the premiums on such a policy, provided insurance in that amount could be procured by the Krevonicks.

During the negotiations for additional insurance the attorney for the Krevonicks wrote the attorney for Mrs. Duggan, as late as May 15th, that under the terms of the contract she had no "present right of possession" to the property. There was no suggestion that the Krevonicks then claimed that the contract was invalid and that Mrs. Duggan would not later be entitled to the property upon compliance with its terms.

It thus appears that the real reason why the Krevonicks desired to avoid a consummation of the sale was the inability of the parties to procure a sufficient amount of fire insurance protection on the buildings, and not the invalidity of the contract.

Nor do we think there is any merit in the contention of the Krevonicks that the performance of the contract on their part was to be conditioned upon the ability of Mrs. Duggan to procure $4,000 of fire insurance on the buildings. It is true that all the parties testified that they expected that insurance in this amount would be procured and carried on the property. But the contract did not place upon Mrs. Duggan the burden of procuring insurance in

this amount. The pertinent provision is: "If the party of the second part hereto on or before six months from date hereof pay the sum of $500.00 in cash and interest on said $6,000.00 at the rate of 5% per annum, payable every three months, the insurance on said property, then and in that event the parties of the first part will convey," etc.

We think the reasonable interpretation of this language is that Mrs. Duggan was to pay the premiums on such fire insurance as the parties might procure on the property. There is no suggestion in this or any other provision of the contract that it would be null and void should adequate insurance be not procurable during Mrs. Duggan's occupancy of the premises.

The next contention of the Krevonicks is that the time and terms of payment of the purchase price are so vague, indefinite and uncertain as to be incapable of specific performance.

In substance, the contract provides that the deferred portion of the purchase price, $5,500, is to be payable three years after date "with the privilege of renewal." The argument is that the words, "with the privilege of renewal," leave the time for the final payment of the purchase price to be determined by future negotiations, and therefore render the time of payment so indefinite and uncertain that a court of equity will not specifically enforce it.

The first answer to this argument is that the term "with the privilege of renewal" does not leave anything to be determined by future negotiations of the parties. In providing that the balance of the purchase price should be "payable three years after date with the privilege of renewal," the parties contemplated, we think, that the purchaser should have the option of renewing the note for one other period of three years, with interest at the same rate and payable as provided in the contract.

In *King* v. *Wilson*, 98 Va. 259, 260, 35 S. E. 727, this court held that a general covenant for renewal in a lease implied a renewal for one term only and not a perpetual

renewal. See also, 16 R. C. L., p. 887, sec. 390; 30 A. L. R. 577, note; 68 A. L. R. 158, note.

The same is true of a general provision for renewal in a note. *Grace* v. *Strickland,* 188 N. C. 369, 124 S. E. 856, 857, 35 A. L. R. 1296; *Kedey* v. *Petty,* 153 Ind. 179, 54 N. E. 798, 800.

Furthermore, the privilege of renewal was a severable and independent covenant for the benefit of the vendee. Even if it be void for uncertainty it does not vitiate or render unenforceable the remainder of the contract. In the present case it has been waived by the vendee since the note for the deferred portion of the purchase price carries no provision for a renewal.

While no such contention is made in the briefs, during the oral argument before us it was suggested that the description of the property by the term " 'Duggan's Inn' in Hanover County, Virginia," is too indefinite to support a decree for specific performance.

It appears from the evidence that the property in controversy consists of fifteen acres of land, on which there are located a gas station, restaurant, swimming pool, etc., all commonly known as "Duggan's Inn." It is the same property formerly owned by Charles Duggan, the husband of the appellant. It is the only property owned by the Krevonicks in Hanover county. There is no dispute as to the identity or extent of the land. The evidence is clear and undisputed that in all the negotiations for the purchase, as well as in the contract itself, the parties had in mind the entire property.

We think the description is sufficiently definite under the circumstances to support a decree for specific performance. See *Harper* v. *Wallerstein,* 122 Va. 274, 94 S. E. 781, L. R. A. 1918C, 517, in which we held that the description, "No. 504 East Marshall street and all improvements thereon," was sufficiently definite.

On the whole our conclusion is that the appellant (the complainant below) is entitled to specific performance of

the contract and the trial court erred in entering the decree here complained of.

The decree is reversed and the cause is remanded for further proceedings in conformity with the views herein set forth.

*Reversed and remanded.*