STARR v. HOLCK.

1. SPECIFIC PERFORMANCE—FINDING OF PERFORMANCE BY TRIAL COURT—EVIDENCE.

In lessees' suit for specific performance of option to purchase, contained in lease, trial court's finding that there had been no material default on the part of the lessees *held*, fully supported by the evidence.

2. VENDOR AND PURCHASER—OPTION—ACCEPTANCE.

Where option to purchase, contained in lease, required that it be exercised by written acceptance to lessor but did not specifically authorize sending the acceptance by mail, it was incumbent upon the lessees to establish that such acceptance was received by the lessors by or before the time specified for its receipt, as the time of the receipt of notice, rather than the time of its mailing, is controlling.

3. CONTRACTS—MANNER OF GIVING NOTICE—TIME.

Where a contract requires notice, but does not specify the manner in which the notice is to be given, mere mailing of the notice is not sufficient unless it is received, in the absence of express provisions in the contract to the contrary, and if the notice is mailed in proper time, but not received until after time fixed for giving notice, it is ineffective.

4. SPECIFIC PERFORMANCE—OPTION IN LEASE—ACCEPTANCE.

In suit for specific performance of option to purchase, contained in a lease, evidence *held*, to fail to show the exercise of the option on or before the end of the original term of the lease.

5. LANDLORD AND TENANT—PRINTED FORM OF LEASE—EXTENSIONS.

Where parties used a printed form of lease, so worded as to indicate an intent to provide for an extension or extensions, it may be assumed they did so with full knowledge of the presence of such provisions, especially where such provision was not stricken out.

6. SAME—CONSTRUCTION OF LEASE—AMBIGUITY.

Ambiguous provisions in a lease, contained on a printed form, must be construed against the lessor or lessors.

7. SAME—CONSTRUCTION OF LEASE WITH MORE THAN ONE PERMISSIBLE MEANING.

It is a recognized rule of construction that where more than one meaning of a provision in a lease is permissible, that most favorable to the lessee must prevail.

8. SAME—EXTENSION OF LEASE—UNFILLED BLANK IN FORM FOR DURATION.

The provisions of a lease with reference to the privilege of extension on the part of the lessees may not be ignored because of the failure of the parties to fill out a blank so as to indicate the duration of the extension, since the lessors may not have cared to specify a definite term therefor or did not think it necessary to do so.

9. CONTRACTS—UNFILLED BLANKS—INTENT.

When a blank in an instrument is not filled, such blank may be rejected as surplusage if it appears that the parties so intended, the intent being inferred from the transaction and its details.

10. LANDLORD AND TENANT—EXTENSION—CONSTRUCTION OF CLAUSE CONTAINING A BLANK.

Under clause of lease providing for "an extension thereof for — years" if the blank is ignored and the lease construed as providing for an extension "for years," then the privilege of extension granted to the lessee was for an added term of two years, that being the shortest period satisfying the phrase and there being no certainty for more than that number of years.

11. SAME—EXTENSION OF LEASE—FAILURE TO DESIGNATE ADDED PERIOD.

Under clause of lease providing for "an extension thereof for — years on the same terms as therein set forth" the portion "for — years" could be eliminated and the lessees given the right to an extension without specific designation as to the length thereof were it not for the fact that an agreement for an extension or renewal of a lease which fails to designate the added period is to be considered as contemplating an extension or renewal for a period equal to the original term.

12. SAME—GENERAL COVENANT TO RENEW—TERMS—TIME.

A general covenant to renew a lease implies a renewal on the same terms and for the same time as the original lease and therefore is sufficiently certain to be enforceable.

13. SAME—RENEWAL—TIME.

A general covenant for renewal does not imply a perpetual renewal but binds the lessor for one term only for the same term as the original lease.

14. SAME—EXTENSION.

Under lease for one year providing for "an extension thereof for — years on the same terms as therein set forth" the parties are considered as having intended an extension of the lease for one year rather than two although whether the extension was for one or two years is not material to decision of the case.

15. SAME—EXTENSION—EVIDENCE—POSSESSION.

Lessees' continued possession of premises evidences acceptance of the privilege of extension granted by the lease where formal notice of intention was not required to be given to lessors.

16. SAME—EXTENSION—OPTION TO PURCHASE.

Under lease for one year providing for "an extension thereof for — years on the same terms as therein set forth, and the covenants of this lease shall apply to all extensions thereof, and the extensions be treated as· if a part of the original term," an extension operated to extend the option to purchase contained elsewhere in the lease, especially in view of another provision that the lessors covenanted to withdraw the premises from sale, during the term of the lease and all extensions thereof, such provisions constituting the option a covenant running with the demise of the land.

17. SAME—OPTION TO PURCHASE—EXTENSION.

In suit for specific performance of option to purchase, contained in lease, evidence *held*, sufficient to show lessees, during extension of lease, undertook to exercise the option by repeatedly demanding a contract pursuant to such option.

18. FRAUDS, STATUTE OF—LEASES FOR LONGER THAN ONE YEAR—SIGNATURES OF LESSEES NOT REQUIRED.

Since the statute of frauds declares that a lease of land for a longer period than one year is void unless in writing and signed by the lessor or lessors, the validity of the lease was not dependent on the signatures thereto of either of two les-

sees where it is apparent that the terms and conditions of the lease were accepted by both lessees and they held possession in accordance with its terms (3 Comp. Laws 1929, § 13413).

19. SPECIFIC PERFORMANCE—OPTION TO PURCHASE BY LESSEES.
  Lessees under one-year written lease of premises, signed by lessors, *held*, entitled to specific performance of option to purchase contained therein, where there was no material default on their part, and they repeatedly requested in writing during an extension of the lease that a contract be executed pursuant to the terms of the lease.

Appeal from Kent; Verdier (Leonard D.), J. Submitted April 9, 1947. (Docket No. 17, Calendar No. 43,591.) Decided June 27, 1947.

Bill by Robert W. Starr against John G. Holck and wife for specific performance of option to purchase contained in lease. Beatrice J. Starr intervened as party plaintiff. Decree for plaintiffs. Defendants appeal. Affirmed.

*Linsey, Shivel, Phelps & Vander Wal,* for plaintiffs.

*Thomas D. Anderson,* for defendants.

CARR, C. J. Plaintiffs in this action seek a decree for the specific performance of an option for the purchase of certain real estate in the city of Rockford, Michigan. The trial court granted the relief sought and defendants have appealed. Said option was incorporated in a written lease of the property which the defendants, as owners, executed to the plaintiffs July 7, 1943. The instrument demised the premises for a term of one year from and after the first day of July, preceding its execution.

The lease, which was largely in printed form, required plaintiffs to pay the sum of $420 for the term

specified, in instalments of $35 on the first day of each month, in advance, together with taxes and insurance. Plaintiffs were given the right to pay at any time larger sums than were due on the lease and to have the excess applied either on rents subsequently accruing or on the purchase price of the premises if the option to purchase therein contained was exercised. Paragraph 8 of the lease in which the terms of the option were specified was as follows:

"8. In part consideration hereof, said first party agrees to withdraw said premises from market and sale during the term of this lease, and all extensions thereof, and at its expiration or at any time prior thereto, if second party shall have complied with all its conditions and shall then elect to purchase said premises, and shall give first party written notice of such election previous to such expiration, first party will thereupon sell second party said premises for the sum of $4,000 and interest thereon at 6 per cent. per annum, computed monthly from the date hereof, less all sums said second party shall have paid under this lease for rent of said premises, aside from insurance and taxes, and less interest on said sums at 6 per cent. per annum computed from the several dates of payment.

"If the purchasers exercise their option to purchase they shall be entitled to a land contract dated back to May 1, 1942 the date they took possession and the rents paid since that day are to be computed as payments monthly, the interest deducted and the balance applied on the principal, just the same as a contract from that date would be."

Plaintiffs first went into possession of the property in May, 1942, under a verbal agreement. Following the execution of the lease they continued in possession, making payments of rent, taxes, and

insurance in substantial compliance with the terms of the lease. Defendants claim that plaintiffs did not fully perform their obligations within the time specified but. the trial court found that there had been no material default on plaintiffs' part. Such finding is fully supported by the evidence.

It is the claim of the plaintiffs that the option to purchase was exercised before the expiration of the year specified in the lease. Plaintiff Robert W. Starr testified on the trial in circuit court that on June 30, 1944, he wrote to defendants from South Bend, Indiana, inclosing a check for the rent due on the following day, and specifically requesting from defendants a land contract for the purchase of the property in accordance with the specifications in the lease. The receipt of the check referred to was not seriously questioned by defendants but they denied having received any such letter as plaintiff Robert W. Starr claims he wrote to them.

It will be noted that the language of the lease providing for the option did not specifically authorize sending the required written acceptance by mail. It was, therefore, incumbent on plaintiffs, if they were required to give such notice before the expiration of the year from and after July 1, 1943, to establish that the letter in question was received by defendants on or before July 1, 1944. The time of the receipt of notice, if it was received, rather than the time of its mailing, is controlling. *Burhans* v. *Corey,* 17 Mich. 282. In 39 Am. Jur. p. 250, it is said:

"Where a contract requires notice, but does not specify the manner in which the notice is to be given, mere mailing of the notice is not sufficient unless it is received, in the absence of express provisions in the contract to the contrary, and if the no-

tice is mailed in proper time, but is not received until after the time fixed for giving notice, it is ineffective.''

There is no showing in the record before us as to the usual course of time within which a letter mailed in South Bend, Indiana, would, at the time of the transaction in question, have reached Rockford. Furthermore, defendants resided on a rural route.' If it be assumed that the letter and check were sent together, as plaintiffs claim, there is no proper basis for a finding that they were actually received by defendants at their home, on the day following the mailing. The conclusion follows that plaintiffs have failed to show the exercise of the option on or before July 1, 1944.

This brings us to the consideration of the question whether the lease should be construed as providing for an extension. The provisions with reference to payment of rent, taxes and insurance, imposed obligations on the plaintiffs, not only during the life of the lease, but, also, during ''all extensions thereof.'' Similar language was used in the paragraph of the printed form with reference to repairs; and paragraph 8, above quoted, required that the lessors withdraw the premises from sale ''during the term of this lease, and all extensions thereof.'' These provisions are in accord with paragraph 4 which reads as follows:

''4. At the expiration of this lease, if said second party shall have made all payments therein specified and complied with all its terms in time and manner as therein set forth, he or they shall be entitled to an extension thereof for —— years on the same terms as therein set forth, and the covenants of this lease shall apply to all extensions thereof, and the extensions be treated as if a part of the original term.''

It is the claim of plaintiffs that they had an election to extend the lease and all of its covenants, that they evidenced such election by remaining in possession after July 1, 1944, and that such possession was so continued pursuant to the terms and provisions of the lease. Defendants insist that plaintiffs were not entitled to an extension, emphasizing that the blank in paragraph 4 was not filled out. On the basis of such omission it is contended, in substance, that the parties did not intend to give plaintiffs the privilege of an extension.

The parties used a printed form of lease, so worded as to indicate an intent to provide for an extension or extensions. It may be assumed that they did so with full knowledge of the presence of such provisions. It is significant, also, that paragraph 4, above quoted, was not stricken out. Had this been done the intention of the parties would have been clearly shown. The principle is firmly established, however, that ambiguous provisions in a lease of this character must be construed against the lessor or lessors. Thus in *Park Building Co.* v. *George P. Yost Fur Co.,* 208 Mich. 349, 357, it was said:

"It is a recognized rule of construction that where more than one meaning is permissible that most favorable to the lessee must prevail; *Pere Marquette R. Co.* v. *Wabash R. Co.,* 141 Mich. 215."

Of like import is *Patterson* v. *Butterfield,* 244 Mich. 330. See, also, *Kaufmann* v. *Liggett,* 209 Pa. 87 (58 Atl. 129, 67 L. R. A. 353, 103 Am. St. Rep. 988).

The provisions of the lease with reference to the privilege of extension on the part of the lessees may not be ignored because of the failure of the parties to fill out the blank. Such failure may well be regarded as indicating that the lessors either did

not care to specify a definite term for the extension or did not think it necessary to do so. When a blank in an instrument is not filled, such blank may be rejected as surplusage if it appears that the parties so intended. In such a case the intent is to be inferred from the transaction and its details. *Hall* v. *First National Bank of Kenmore*, 226 App. Div. 190 (234 N. Y. Supp. 432); *N. E. D. Holding Co.* v. *McKinley*, 246 N. Y. 40 (157 N. E. 923); 17 C. J. S. p. 417. If the blank is ignored, and the lease construed as providing for an extension "for years," then the privilege granted to the lessees was, under the common-law rule recognized by some authorities, for an added term of two years, that being the shortest period that may be regarded as satisfying the phrase. The principle is stated in 5 Bacon's Abridgment, p. 623, as follows:

"If a man makes a lease for years, without saying how many, this shall be a good lease for two years certain, because for more there is no certainty, and for less there can be no sense in the words."

A similar statement is found in *Denn* v. *Cartright*, 4 East, 31 (102 Eng. Rep. 740); *Bishop of Bath's Case*, 3 Coke's Rep., p. 323; 1 Washburn on Real Property (6th Ed.), p. 350. In accordance with the rule of construction referred to the supreme court of Washington, in *Boston Clothing Co.* v. *Solberg*, 28 Wash. 262 (68 Pac. 715), held that a lease for "one or more years" constitutes a term of two years, citing Wood, Landlord and Tenant (1st Ed.), § 291; and Gear, Landlord and Tenant, § 25. This decision was cited and followed in *Metcalf Auto Co.* v. *Norton*, 119 Me. 103 (109 Atl. 384), where it was held that a lease or agreement to lease for years or for a term of years is a good lease or agreement for two years. The application of this

rule in the case at bar involves treating the blank as surplusage and the privilege of extension as one for years, leading to the conclusion that plaintiffs had the privilege, under the lease as drawn, of an extension for two years.

The lease in question may also be construed, and its provisions given force and effect, by eliminating from paragraph 4 the phrase "for —— years." Such elimination would result in giving to plaintiffs the right to an extension without specific designation as to the length thereof. It is definitely settled by authority, however, that an agreement for an extension or renewal of a lease, without designation of the added period, is to be considered as contemplating an extension or renewal for a period equal to the original term. In *Karn* v. *DiLorenzo,* 95 Conn. 267 (111 Atl. 195), it was said:

"It has uniformly been held that a general covenant 'to renew,' implies a renewal on the same terms and for the same time as the original lease, and therefore is sufficiently certain to be enforceable."

In *King* v. *Wilson,* 98 Va. 259 (35 S. E. 727), a lease was given for a 10-year period subject to the following provision "Renewable or pay for the improvements at their valuation." It was recognized that the clause quoted meant that the lease was renewable for another 10-year period at the option of the lessee. In reaching this conclusion it was said:

"It is well settled that a general covenant for renewal, such as the one in question, does not imply a perpetual renewal. The most the lessor is bound to give on such a covenant is a renewal for one term only."

Of like import are *Duggan* v. *Krevonick,* 169 Va. 57 (192 S. E. 737); *Penilla* v. *Gerstenkorn,* 86 Cal. App. 668 (261 Pac. 488); *Austin* v. *Newham,* (1906)

2 K. B. 167 (6 Ann. Cas. 102). In the note in Ann. Cas., following the case last cited, it is said:

"A lease containing a general promise to renew, without specifying the duration of the term of renewal, has usually been held to refer to the terms of the lease in which such language is used, so as to be, in effect, an agreement to renew for the same term as the original lease."

The statement is supported by the citation of authorities.

Applying the suggested method of construction in the case at bar leads to the conclusion that plaintiffs were entitled to the privilege of an extension of the lease for one year. We think that such result is more consistent with the actual intention of the parties than the interpretation resulting in an extension for two years, above discussed. We accept it for that reason, although it is obvious that insofar as' the case at bar is concerned whether the extension contemplated by the lease is regarded as for one year or for two years is not material.

Plaintiffs continued in possession of the property after July 1, 1944, and in fact were still in possession at the time of the trial in the circuit court. Their election to accept the privilege of extension granted by the lease was evidenced by such possession. Formal notice of the intention was not required to be given defendants, there being no provision in the lease imposing such requirement. In *Delashman* v. *Berry,* 20 Mich. 292 (4 Am. Rep. 392), the lease involved was for a term of one year "with the privilege of having the same three years at the same rent, at the option of the lessee." Proceedings were brought to oust the lessee who had remained in possession a few days after the expiration of the term of one year without otherwise giving

notice of his intention to avail himself of the privi-, lege granted by the option. In determining that such notice was not necessary it was said:

"Such a notice had it been given would have been a notice only of the lessee's intention to *continue* the *same* occupation, upon the *same terms* as before. And upon principle it would certainly seem that the *actual continuance* of such occupation was the best and most conclusive evidence of *his intention* to continue. And, as it was at his option to have the term expire at one year or three years, and he had covenanted to deliver up possession at the end of the term; but one inference could legally and properly be drawn from such continuance, after the year, *viz:* that he intended to continue *right-fully* according to the terms of his lease, rather than *wrongfully* in defiance of its provisions. If he elected to remain at all after the first year, he must be held to have elected under, and according to, the terms of the lease which gave him no right to elect a term of five days, a month or any other period, except the optional term provided by the lease, which in this case could not have been less than one year, if in fact, less than two years, after the expiration of the first."

The Court further recognized that a different situation might be presented under a lease providing for a renewal by the execution of a further instrument, in which event notice by the lessee might be required. A distinction between an extension provision and a renewal provision was considered by the Iowa supreme court in *Andrews* v. *Marshall Creamery Co.* (1902), 118 Iowa, 595 (92 N. W. 706, 60 L. R. A. 399, 96 Am. St. Rep. 412), where it was said: .

"There seems to be no doubt under the authorities that, where a lease provides that the tenant may

have, at his option, an extension for a specified time after the expiration of the term agreed upon in the lease, or may occupy for an extended term including the term specified, the mere holding over after the expiration of the specified term will constitute an election to hold for the additional or extended term, and the tenant, after holding over beyond the first term without any new arrangement, is bound for the additional or extended term, as fully and completely as though that term had been originally included in the lease when executed. *Delashman* v. *Berry,* 20 Mich. 292 (4 Am. Rep. 392); *Terstegge* v. *First German Mutual Benevolent Society,* 92 Ind. 82 (47 Am. Rep. 135); *Montgomery* v. *Board of Commissioners of Hamilton County,* 76 Ind. 362 (40 Am. Rep. 250); *Peehl* v. *Bumbalek,* 99 Wis. 62 (74 N. W. 545); *Harding* v. *Seeley,* 148 Pa. 20 (23 Atl. 1118); *Mershon* v. *Williams,* 62 N. J. Law, 779 (42 Atl. 778); *Clarke* v. *Merrill,* 51 N. H. 415. According to this view, the continuance in possession is sufficient proof of an election to enjoy the privilege of extension provided for. *Kramer* v. *Cook,* 7 Gray (73 Mass.), 550; *Stone* v. *St. Louis Stamping Co.,* 155 Mass. 267 (29 N. E. 623); *Holley* v. *Young,* 66 Me. 520."

The extension of the lease operated to extend the option to purchase. Under paragraph 4 of the instrument, hereinbefore quoted, all covenants in the lease applied to extensions, and the extensions were required to be treated "as if a part of the original term." A further provision in paragraph 8, whereby the lessors covenanted to withdraw the premises from sale, during the term of the lease and all extensions thereof, further indicates the intention of the parties. Clearly the parties contemplated that if the lessees exercised the privilege of extension the option to purchase would be likewise extended.

In *Meadow Heights Country Club* v. *Hinckley,*
229 Mich. 291, defendants executed to plaintiff a
lease for a 10-year period with the privilege of re-
newal for five additional years on the same terms.
The lessee continued in possession during the re-
newal period, and gave notice of its election to
exercise the option to purchase the property for
$125 per acre, as provided in the lease. In holding
that plaintiff was entitled to a decree for specific
performance the Court said in part:

"The parties agreed that the option to purchase
might be exercised at any time before the termina-
tion of the lease. When did this lease terminate?
The lease was a present demise for the period of
15 years at the option of plaintiff. *Delashman* v.
*Berry,* 20 Mich. 292 (4 Am. Rep. 392); *Flynn* v.
*Bachner,* 168 Mich. 424 (Ann. Cas. 1913 C, 641).
The lease itself extended the term. *Luthey* v.
*Joyce,* 132 Minn. 451 (157 N. W. 708, L. R. A. 1916 E,
1235); *Bergstein* v. *Bergquist,* 152 Minn. 358 (189
N. W. 120). The parties contracted for a 15-year
holding by plaintiff, if plaintiff so desired, and cer-
tainly there could be no termination of the lease
until the right to hold thereunder ended. The lease
expressed no new purpose and carried no limita-
tions during the extended period. The lease con-
stituted the option to purchase a covenant running
with the demise of the land."

Likewise, in *Thomas* v. *Gottlieb Bauernschmidt
Straus Brewing Co.,* 102 Md. 417 (62 Atl. 633), the
lease contained provisions for extensions and, also,
an option to purchase during the first extension of
the tenancy. The lessee undertook to exercise the
option during such extension. There, as in the case
at bar, it was expressly provided that all covenants
should continue in force during extensions. It was
held accordingly that the lessee was entitled to

specific performance on the ground that he had exercised the option within the time specified by the lease and in accordance with the provisions thereof. The same conclusion was reached in *Waters* v. *Wambach,* 140 Md. 253 (117 Atl. 751); *Schaeffer* v. *Bilger,* 186 Md. 1 (45 Atl. [2d] 775, 163 A. L. R. 706), and *Ackerman* v. *Loforese,* 111 Conn. 700 (151 Atl. 159). In *Masset* v. *Ruh,* 235 N. Y. 462 (139 N. E. 574), a lease was given for a term of three years with the privilege of renewal for a like period, and, also, with an option to purchase at a specified price "during the term and existence of the lease." The lease was renewed in accordance with these provisions and it was held the lessee could exercise the option to purchase at any time during the extended term. As in *Meadow Heights Country Club* v. *Hinckley, supra,* it was held that the lessees had a lease for the original term of three years and for an extended term of like duration as well. Citations of other cases, recognizing and applying the rule laid down in the decisions above discussed, will be found in the annotation following *Sherwood* v. *Tucker,* (1924) 2 Ch. 440, as reported in 37 A. L. R. 1239, and, also, in the annotation following *Schaeffer* v. *Bilger, supra,* as reported in 163 A. L. R. p. 706.

Plaintiffs exercised the option in the instant case during the extension of the lease by giving to defendants written notice of their desire to do so. Assuming that the letter claimed to have been written by Robert Starr on June 30, 1944, was not received by defendants, subsequent letters, which defendants admitted came to them in the due course of the mails, may properly be construed as demanding a contract pursuant to the option clause of the lease. Plaintiffs' exhibit 2, a letter dated August 12, 1944, written by plaintiff Robert Starr

to defendant John Holck, specifically requested that a contract be prepared, presented to the plaintiff Beatrice J. Starr for her signature, and then forwarded to the writer. Further reference to the contract was made in a letter written by plaintiff Robert Starr to defendant John Holck, enclosed in an envelope bearing a postmark indicating that it was mailed from Silver City, New Mexico, on September 7, 1944. This letter is not in the printed record, but is included in certain original exhibits forwarded by counsel for defendants to the clerk of this Court. Plaintiffs clearly undertook to exercise the right granted to them by the option provision of the lease.

It is further claimed that the validity of the lease is open to question on the ground that it was not signed by plaintiff Beatrice J. Starr. On the record before us there seems to be some question as to whether said plaintiff actually signed the instrument. The suit was originally started by plaintiff Robert W. Starr alone. He attached to his bill of complaint, as exhibit A, a copy of the lease which indicated that the instrument had not been signed by Beatrice J. Starr. On the trial, however, defendants' duplicate of the lease was introduced in evidence as exhibit 4. It has been returned to this Court with other exhibits above mentioned. This exhibit bears the purported signature of Beatrice J. Starr. Her testimony on the trial was not specific as to whether she had actually signed it or not. Whether she did so is immaterial. In accordance with leave granted by the court she intervened as a party plaintiff, asserting interest with that of the other plaintiff under the lease and the option to purchase. It is apparent that the terms and conditions of the lease were accepted by both lessees. They held possession of the property in accordance

with its terms. Under 3 Comp. Laws 1929, § 13413 (Stat. Ann. § 26.908), a lease of land for a longer period than one year is void unless in writing and signed by the lessor or lessors. Such requirement is not imposed on lessees. The validity of the lease in the instant case was not dependent on the signatures of the plaintiffs, or either of them.

The trial judge correctly determined that plaintiffs were entitled to the relief sought. The decree is affirmed, with costs to appellees.

BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.