**Paul H. GOODMAN, d/b/a Good Realty Company, Appellant (Plaintiff below),**

v.

**Boyd KELLY, Appellee (Defendant below).**

**No. 3176.**

Supreme Court of Wyoming.

March 18, 1964.

245

A. Joseph Williams and Brooke Wunnicke of Williams, Wunnicke & Fennell, Cheyenne, for appellant.

Edwin V. Magagna, Rock Springs, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Plaintiff, Paul H. Goodman, a real estate broker doing business as the Good Realty Company, brought action to recover a commission claimed due under a listing authorizing him to sell certain real estate and equipment for defendant, Boyd Kelly. From an adverse judgment, entered pursuant to a jury verdict, plaintiff appeals.

There is little dispute as to the facts pertinent to the appeal. At all times herein plaintiff was a licensed real estate broker in Wyoming with some twenty-two years' experience in the business. Defendant was the owner of a ranch near Daniel, Wyoming, and under date of August 3, 1956, signed a listing agreement whereby defendant granted to plaintiff the right to sell defendant's ranch and equipment at a price of $400,000, for which plaintiff was to receive a commission of two per cent. The agreement was on a printed form furnished and used by plaintiff for such purposes, and with the exception of defendant's signature, all handwriting on the form was that of the plaintiff. Among other things, the agreement reserved to defendant the right to make sale of his property through his own efforts without liability to plaintiff for the commission, with the proviso, however, that plaintiff would be entitled to his commission "in case said property is sold within six months after the termination of

this listing to James Bros. of Jackson or any other person introduced to or shown said property through your [plaintiff's] advertising or efforts." Inasmuch as sale of the property was made by defendant to "James Bros. of Jackson" on May 6, 1957, without the assistance or participation of plaintiff, the termination date of the listing is of critical importance. The agreement provided:

"* * * This listing shall continue until Nov. 1, 1956, and thereafter until terminated in writing _____ days in advance."

By way of explanation for failure to fix a specific number of days for advance notice as seems to be contemplated by the form, the plaintiff, called by defendant under Rule 43(b), W.R.C.P., and over objection of his counsel, testified as follows:

"Q. Now, handing you what has been marked for identification as Plaintiff's Exhibit 1, did you and Mr. Kelly have any discussion relative to the last sentence contained therein? A. Yes, we did. I pointed out that it reads there, until November 1st, and thereafter until given notice in writing. So since there is no need in putting a number of days, any time that you want me to quit, my services are not satisfactory, why you just give me a letter in writing that you don't want me to work on it any more, so we did not put in any number of days, which is my custom, as I do nearly all of my listings.

"Q. You say you do that in all of your listings? A. Nearly all of them unless they insist upon it—unless they insist to the contrary."

Although defendant denied such conversation occurred, we think a reasonable view of his testimony was to the effect that the life of the listing was discussed but that the termination date was to be fixed as of November 1, 1956. In any event, defendant so treated the listing and failed to notify plaintiff in writing at any time that the listing was revoked as of that date. We

have already mentioned that defendant, acting for himself, made sale of the property to James Bros. six days after the six-month period from November 1, 1956, had elapsed. Plaintiff testified that he did not learn of the sale until after it was consummated and thereupon made demand on defendant for his commission to no avail. This litigation followed.

In presenting the matter to us, the parties center their attention upon the provisions of the agreement, and in that respect we refer briefly to the pleadings. For his right of recovery, plaintiff alleges that the listing was to remain in full force and effect until November 1, 1956, and thereafter until terminated in writing; that under its terms plaintiff was to receive his commission if sale was made by defendant to James Bros. within six months of the termination date of the listing; that defendant failed to terminate the listing in keeping with its terms, and during the effective period of the listing sold the property to James Bros. for the sum of $388,000; and that as a result of such sale defendant owes plaintiff the commission fixed by the listing. Plaintiff also alleged bad faith on the part of defendant in making the sale, but abandoned such issue at the trial and relied solely upon the terms of the listing.

In answering, defendant admits the signing of the listing and the sale to James Bros. on May 6, 1957; denies that such sale was made at a time when said listing was in effect; alleges that defendant sold the property "after said listing had expired by its own terms"; and then, concerning the failure of the agreement to fix a specific time for advance notice of termination, alleges "that it was the intent of the parties that said listing was to expire by its own terms on November 1, 1956, and was not to continue thereafter until terminated in writing and for that reason no time for said written notice was inserted in said listing in the blank provided therefor." Defendant also alleges waiver and abandonment by plaintiff of the conditions imposed by the listing, but the only evidence offered in support is

that plaintiff, after November 1, 1956, had not taken the James Bros. to defendant's ranch. Aside from lack of evidence to support the affirmative defense, defendant must be held to have waived the matter. Defendant took no exception to Instruction No. 2 whereby the only issue tendered to the jury was the question of whether it was the intention of the parties that the contract "was to expire November 1, 1956," or whether it was the intention of the parties "as expressed in said listing that it would not expire until written notice was given by defendant."

At the close of the evidence, the sale to James Bros. on May 6, 1957, having been established, plaintiff moved for a directed verdict in keeping with his theory of the case that the listing was not ambiguous with respect to time and provision for termination, and for such reason "the construction of the contract is a legal question for the determination by the Court and is not a question of fact to be determined by the Jury." The motion was overruled, and over the further objection of plaintiff to Instruction No. 2, the question of intent was submitted as above noted.

█ In order clearly to delineate the matters submitted for our consideration, some further comment on the state of the record is indicated. Plaintiff claimed error in that the verdict was contrary to the evidence, and the judgment contrary to law; also, that the trial court erred in overruling his motion for a directed verdict. However, on argument, counsel for plaintiff conceded that the judgment must stand if the trial court correctly ruled on the motion. We assume that such concession was made in recognition of the fact that the testimony of the parties concerning the conversation as to the period of time that the listing was to remain in force, if competent, was in conflict, and under such circumstances the finding of the jury will not here be disturbed. Thus, plaintiff submits the case on the merits of his motion. As we view it, defendant's resistance to the appeal is likewise limited to consideration of the propri-

ety of the ruling on the matter. True, defendant alleged and argues that the failure to fix a time for service of the notice of termination was in keeping with the intent of the parties that no such written notice was required. Nevertheless, defendant did not seek reformation of the listing on the ground of mutual mistake, and without intimating in the least that such remedy may have been open to him, the fact is that he did not pursue it and under our rules must be held to have waived such defense. Consequently, the sole question for our determination is whether or not the provision of the listing on its face, relating to the material and critical issue of the period of time that the listing was to remain in force, clearly expressed the intention of the parties.

█ If the meaning of the provision was apparent and unambiguous, the interpretation of the provision was for the court as a matter of law. If otherwise, resort may be had to competent evidence of extraneous circumstances that tend to explain the ambiguity and further illustrate the intention of the parties at the time the provision was adopted. In such an instance, interpretation becomes a mixed question of law and fact. Johnson v. School Dist. No. 14, Platte County, 70 Wyo. 407, 250 P.2d 890, 892; Bosler v. Coble, 14 Wyo. 423, 84 P. 895, 898; and 17A C.J.S. Contracts § 617. However, such evidence is not admissible to contradict, alter, add to, or vary the plain terms of the provision. Holly Sugar Corporation v. Fritzler, 42 Wyo. 446, 296 P. 206, 215.

In discussing the contentions of the parties on the question before us, no doubt it can be said that if a specific time had been fixed for advance notice of termination, the case would not be here. We held in Leet v. Joder, 75 Wyo. 225, 295 P.2d 733, 739, that the usual practice in brokers' listings of fixing a primary term, and continuing it thereafter until terminated by written notice to the broker a fixed number of days in advance, was sufficiently definite to be en-

forced. See also 12 Am.Jur.2d, Brokers, § 61. However, it is the insertion of the lines instead of a figure in the blank space of the form preceding the words "days in advance" that gives rise to the contention of defendant that the Leet case is not controlling. Defendant argues that the result was to make such phrase indefinite and meaningless and to create ambiguity in the effective date of the listing; that had the parties intended written notice of termination, the figure of one or more days would have been inserted; that it is unreasonable to construe the lines to mean "No"; and that if plaintiff desired to have the listing continue until terminated in writing, plaintiff could very simply have so stated. Plaintiff, of course, views the provision as being complete and free from any ambiguity and counters defendant's suggestion of plaintiff's responsibility in drafting with the thought that if defendant intended the listing to come to an end by its own terms on November 1, 1956, he should have seen to it that a period instead of a comma was inserted after the figure "1956" and that the phrase "and thereafter until terminated in writing" was stricken.

■ It must be conceded that each party's contentions are not without some appeal. Defendant suggests that we nudge his a bit in the light of the recognized rule that in case of doubt as to the meaning of the terms of an instrument, the doubt will be resolved against the scrivener of the instrument, particularly where, as here, it is spread on a printed form adopted by the scrivener. We would agree with defendant that there is good reason to invoke the rule to the extent possible. Seldom have we seen such negligence and carelessness in the drafting of an instrument of agency by a real estate broker of long experience for the sale of an owner's property of the magnitude here involved. Nevertheless, we may not, under the guise of interpretation, rewrite the contract for the parties and cannot go beyond our function of interpreting the language used according to established legal principles. McGinnis v.

General Petroleum Corporation, Wyo., 385 P.2d 198, 203; and Owens v. Mountain States Telephone & Telegraph Co., 50 Wyo. 331, 63 P.2d 1006, 1012. Besides, as stated in the Owens case, where it appears that the "owner receives and appropriates to his own use, the benefit of the efforts of a broker, no sound reason exists why courts should construe the contract strictly in favor of the owner." Here defendant makes no attack upon the special provision recognizing James Bros. as a prospective purchaser produced by plaintiff.

■ We come now to the effect, if any, of the so-called blank space in the termination provision. Technically speaking, it is not entirely correct to say that the blank space remained unfilled. Two lines were drawn through it by plaintiff. However, that seems of little importance. In either circumstance, there can be little doubt that the phrase " ===== days in advance" is meaningless. That is not to say, however, that it rendered the entire termination provision meaningless, indefinite, or incomplete. In 17 C.J.S. Contracts § 65, p. 742, it is said:

> "A writing is incomplete as an agreement if blanks as to material matters are left in it, unless the omission may be supplied from other parts of such writing or the blanks are subsequently and lawfully filled. Blanks may be rejected as surplusage if the parties so intend."

The language contained in the form indicating a fixed time of giving advance notice of termination became a requirement only if agreed upon by the parties. Lack of it would not obviate the requirement of notice in writing. The phrase was not essential to complete the method adopted for termination. Such is the view taken of a substantially similar listing in the case of Mansfield v. Goodhue, 142 Me. 380, 53 A.2d 264. See also Starr v. Holck, 318 Mich. 452, 28 N.W.2d 289, 292, 172 A.L.R. 413. Clear language that the "listing shall continue until Nov. 1, 1956, and thereafter until terminated in writing" can scarcely be...

overlooked. It required affirmative action on the part of defendant after November 1, 1956, in order effectively to terminate. Bonn v. Summers, 249 N.C. 357, 106 S.E.2d 470, 472. That we think clearly expressed the intent of the parties, and the phrase relating to advance notice may be rejected as surplusage. When the provision is so read it is not ambiguous. It was the duty of the trial court so to interpret it, and it was error to submit the issue of intent to the jury.

The judgment must be and is hereby reversed, and the cause is remanded to the trial court for further action consistent with the views herein expressed.